53 CCPA

**Robert L. DREYFUS and John W. Harrison, Appellants,**

**v.**

**Martin M. STERNAU, Appellee.**

**Patent Appeal No. 7563.**

United States Court of Customs and Patent Appeals.

March 24, 1966.

Alvin Guttag, Washington, D. C. (C. Edward Parker, Cambridge, Mass., of counsel), for appellants.

John A. Blair, Detroit, Mich., James M. Heilman, Washington, D. C., for appellee.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

This is an appeal from the decision of the Board of Patent Interferences awarding priority of invention of the subject matter of interference No. 93,409 to Sternau, the senior party, on application serial No. 591,628, filed June 15, 1956. In issue is a single count copied from U. S. Patent No. 2,976,655, granted to the junior parties, Dreyfus et al. (Dreyfus), on an application filed August 20, 1959. The patent is assigned to W. R. Grace & Co., the application in suit is assigned to the Dow Chemical Co.

The count reads:

> A method of forming a cover having an elastic edge comprising positioning a film of a high shrink energy polymer over and beyond the lip of a container, maintaining pressure on the film over the container, forcing the excess film downwardly around the container to form a gathered skirt and heating a band of said skirt briefly to shrink the skirt and provide a gathered but relatively elastic edge.

The issues raised by this appeal are (1) whether Sternau can support certain limitations in the count; (2) whether Sternau's application complies with 35 U.S.C. § 112; and (3) whether the count is new matter in the Sternau application.

As to the first issue, Dreyfus contends that Sternau cannot support the following limitations: (1) providing a relatively elastic edge; (2) positioning a film of a high shrink energy polymer; (3) forc-

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

ing the excess film downwardly around the container; and (4) heating a band of said skirt briefly. We agree with Dreyfus as to Sternau's lack of support for the first limitation set forth above, and thus need not consider the other matters raised by this appeal.

Procedurally, this appeal comes to this court with this history. Dreyfus alleged no date earlier than the filing date of the senior party Sternau, and he was accordingly placed under order to show cause why judgment should not be entered against him. Dreyfus responded by moving to dissolve on the ground that the count is not supported by Sternau's disclosure, and that that disclosure is fatally defective in that it fails to comply with the requirements of 35 U.S.C. § 112. This motion was denied by the primary examiner. Dreyfus thereupon requested that final hearing be set for consideration of matters set forth in his motion to dissolve. The Board of Patent Interferences held that Sternau could support all the material limitations in the count.

According to Dreyfus, the covers provided by the method of the count have a variety of uses including refrigerator dish covers, bathing caps, and tray-packed foodstuff covers. One method by which Dreyfus achieves a cover having a relatively elastic edge is described as follows:

> In operating according to the invention the container is positioned on the turntable. The film of irradiated biaxially oriented polyethylene from 0.5 to 5 mils, e. g., of 3 mil thickness, is then positioned over the top of the container. The lever is then lowered until the upper portion of diaphragm engages the film. The diaphragm not only holds the film in place but is also evenly bends down the overlying edges of the film. The hot air blower is then started as is the turntable. The hot air forces the film in place against the sides of the container while at the same time the hot air also shrinks the film. As a result the film forms a thickened edge or bead * * * around the lip of the container. This thickened edge is usually about 5 to 10 times as thick as the film itself. As a result, an elastic edged cover for the container is formed. The cover can be removed to open the container and then can be applied again as a cover for the container due to its elasticity.

In describing the operation of a machine designed to provide covers for milk bottle hoods, TV dinner trays and the like, Dreyfus states:

> After the downwardly blowing air has formed the shirred skirt then the cone is lowered further so that the lip or flange of the container rests on the circular impluse sealing ring, about 1/8 inch from the edge all around with the gathered film between the wire and the lip of the dish. The sponge applies slight downward pressure on top of the dish to maintain intimate contact all around. The impulse sealer is then operated, i. e. by heating, for 1¼ second at 450° F., to seal the wrinkles and shrink the film generally to provide a *gathered but relatively elastic edge.* (Emphasis ours.)

In still another portion of Dreyfus, the following is stated in describing the operation employed in making bathing caps from high shrink energy material:

> A controlled amount of heat only should act on each disk of film material. Consequently, resistance wire after its original energization is almost immediately timed out by the action of the timing device. Time-out varies according to the thickness and nature of the film, but as an example, if the film be 1 mil thick irradiated polyethylene and the diameter of the ring of resistance wire be approximately 3¼ inches, time-out should occur after approximately 120 watt seconds have been released by the resistance wire.

Dreyfus defines the term "elastic" as follows:

> The term "elastic" is used in its popular sense as possessing the properties of extensibility and retracti-

bility associated with vulcanized rubber.

Sternau relates to the provision of "a closure which is an inexpensive, simple hermetic seal for a container irrespective of whether the container is made of paper, plastic, aluminum, steel, etc." The closure may consist of either an inner component of a transparent oriented plastic sheet alone or in combination with an outer component of a semirigid, moldable material, such as aluminum, paper, plastic, glass, steel, etc.

The most pertinent portion of Sternau for purposes of this appeal reads as follows:

> A closure may be made using an outer single-ply cover of aluminum, or paper, etc. as a retainer for a shrinkable plastic sheet, which is substantially larger than the mouth of the container. The plastic sheet is placed on top of the container, and the cover snapped onto the container. This will create the essential condition that the film is held flat across the mouth of the container, while the rim of the film is arranged around the rim of the container in pleats protruding beyond the outer cover. Thus, when heat is applied to the rim, the protruding film will shrink, conforming to the shape of the rim of the container and forming therewith a tight seal around said rim, while the remainder of the film is pulled tightly across the mouth of the container. This third method has the advantage that the outer cover can be removed without disturbing the seal of the film portion of the closure. *This process has the additional advantage that the outer cover can be repeatedly taken off and snapped back onto the container without losing its original efficiency of snapping onto the container, and locking below its rim due to its expandable, pleated rim.* (Emphasis ours.)

It will be noted that the foregoing passage describes a two-ply closure, the inner ply being of a shrinkable plastic sheet and an outer ply being of aluminum, paper, plastic, etc. Referring back to the count, it will be noted that it calls for a cover made of a film of a high shrink energy polymer. It is apparent that Sternau's outer ply, being of aluminum or paper construction, cannot possibly fit the description of a "film of a high shrink energy polymer." There is no dispute as to this. There is, however, some dispute as to whether the shrinkable plastic sheet, otherwise denominated by Sternau as a heat shrinkable, oriented material, is inherently a material having a high shrink energy. We will proceed on the assumption that the shrinkable plastic sheet does meet the limitation in the count as to a film of a high shrink energy polymer. Thus, it is with regard to the inner cover that Sternau, as copier of the claims from the Dreyfus patent, must establish support for the invention of the count.

Considering the above-quoted passage from Sternau further, it is noted that upon heating, the inner ply shrinks in such a manner as to form a tight seal around the rim of the container. Nothing is mentioned concerning the elastic properties of the inner ply in its shrunken state. The *outer cover* is stated to have an *expandable, pleated* rim, but it is not readily apparent from the application how this construction is achieved. In any case, it has no bearing on the construction of the inner ply, which is the one with which we must be concerned.

It is further noted that Sternau is completely silent in the passage under discussion, as well as throughout his disclosure, as to the specifics of his operating conditions. While Sternau's specification states that "heat may be applied by hot air, hot water, steam, electricity, or even by an open flame," no temperatures are given for the heating step; no mention is made as to the length of time the inner ply is subjected to heating conditions, and no specific materials are mentioned which fit the description of a shrinkable plastic sheet or a heat shrinkable oriented film. Moreover, there is no hint in Sternau that the inner ply should be capable of being removed and reapplied to the container which it seals.

With the above in mind, we now turn to a consideration of the decisions below.

In reply to Dreyfus' motion to dissolve based on the contention that Sternau does not disclose forming a "gathered but relatively elastic edge," the primary examiner stated:

> * * * however, * * * the Sternau specification points out that the film is arranged around the rim of the container "in pleats" and that heat is applied to the "rim" of the film to cause it to shrink into engagement with the rim of the container. Since the count is directed to a method, it is of no consequence that the pleating is done by an outside cover member. Also, since the cover material is a plastic film and since it shrinks to form a bead or raised edge around the container, it must inherently be "relatively elastic."

The board adopted the examiner's holding without elaboration.

Implicit in the examiner's holding is the conclusion that Sternau does not expressly disclose a cover having a relatively elastic edge. We concur in this conclusion. However, we are not persuaded that there is sufficient ground for holding that Sternau's cover must inherently have an elastic edge. In Sternau, we are faced with an application completedly devoid of specific teachings as to the crucial matters in question. Were there some indication of the specific materials employed, or the process conditions to which the broad class of materials are subjected, it might be possible to establish that the limitations in the count are inherently met. But in these matters the application is silent. Moreover, we cannot find in Sternau any indication that he desired an inner cover which could be removed and reapplied to the container. Such a teaching might provide a basis for an inference that the inner cover did in fact have a relatively elastic edge. No doubt, if such were within his contemplation, one of ordinary skill in the art could devise process conditions to achieve such a result. But that is not the criterion upon which the issue of inherency is resolved.

By copying claims from an issued patent, and lacking express support for the limitations found therein, Sternau was faced with a twofold burden. First, one copying a claim from a patent for the purpose of instituting interference proceedings must show that his application clearly supports the count. Jepson v. Coleman, 314 F.2d 533, 50 CCPA 1051. There must be no doubt that an application discloses each and every material limitation of the claims and all doubts must be resolved against the copier. Jepson v. Coleman, supra; Bierly v. Happoldt, 201 F.2d 955, 40 CCPA 774. Second, where support must be based on an inherent disclosure, it is not sufficient that a person following the disclosure might obtain the result set forth in the counts; it must inevitably happen. Crome v. Morrogh, 239 F.2d 390, 44 CCPA 704.

There is of record an affidavit filed in behalf of Sternau, the pertinent averments of which read as follows:

> * * * that he has conducted and had conducted experiments with various heat shrinkable oriented films wherein film substantially larger than the mouth of a container has been laid across the mouth of the container, the periphery of the film has been arranged around the container and heat has been applied to the periphery to shrink the film and form a closure;
>
> * * * that he has found that all of the heat shrinkable oriented film tested, as described, produced a gathered pleated skirt extending downwardly around the container when the periphery of the film was arranged around the container;
>
> * * * that he has found that all of the heat shrinkable oriented film tested as described produced a closure having a gathered but relatively elastic edge permitting repeated removal and

replacement of the closure on the container;

> * * * that, as a result of his experience and experimentation, he believes that any of the available heat shrinkable oriented films can be laid across and arranged around a container to form a gathered pleated skirt and will produce a closure having a gathered pleated skirt with a gathered but relatively elastic edge when the skirt is heat shrunk.

We make the following observations with regard to the affidavit. Affiant has not averred that the nine available heat shrinkable oriented films were tested. While *various* films were tested, how many or which particular ones we do not know. Nor do we know what process conditions were employed. While the first three averments are factual in expression, no data of any sort are presented. The fourth averment is clearly an expression of affiant's opinion.

In our view, it would do violence to the well-settled principles regarding inherency to hold that Sternau's disclosure and affidavit contain sufficient evidence to warrant a finding that the material limitation in question is inherently disclosed. Both the disclosure and the affidavit are couched in the broadest of generalities, and it would require a bold *ipse dixit* on our part to decide the issue in question in Sternau's favor. This we will not do.

For purposes of deciding whether Sternau could support the limitation in the count "provid[ing] a * * * relatively elastic edge," we assumed arguendo that Sternau could support the further limitation "a film of a high shrink energy polymer. Turning to a consideration of the latter issue, we believe that this limitation is also not supported by Sternau.

The count calls for use of a film of a high shrink energy polymer. It is undisputed that Sternau does not describe the inner ply in terms of shrink energy. Rather, the inner ply is described, inter alia, as a heat shrinkable, oriented film. Under the law of inherency, it is incumbent upon Sternau to establish that a heat shrinkable, oriented film necessarily has a high shrink energy.

The examiner appears to have misconstrued the law of inherency. He found that since some of the materials disclosed by Dreyfus as *films of a high shrink energy polymer* were known in the art prior to Sternau's filing date, and since such films were also known as *shrinkable, oriented films,* the latter phrase, used by Sternau, would lead to the selection of a film of a high shrink energy polymer.

While apparently differing with the examiner as to the proper test to apply, the board agreed with the examiner's holding that Sternau inherently supported the limitation in question.

The resolution of this issue actually turns on a relatively narrow point. Both parties agree that the description "a film of a high shrink energy polymer" does not include a film of low density, hot-blown polyethylene. The dispute arises as to whether the description heat shrinkable, oriented film, employed by Sternau, includes low density, hot-blown polyethylene. If it does, then one following Sternau's teachings *might select* low density, hot-blown polyethylene as a heat shrinkable, oriented film and thus provide a cover which is not a film of a high shrink energy polymer.

Sternau's evidence that low density, hot-blown polyethylene is not considered in the art as a heat shrinkable, oriented film consists in the main of averments in the affidavit discussed supra. The pertinent averments read:

> 10. that in the film manufacturing and utilization industries the term "shrinkable film," as generally used, includes all nine of the commercially available shrink films;
>
> 11. that in the film manufacturing and utilization industries the terms "oriented film" or "shrinkable oriented film" are used to mean only those shrink films which have been subjected to special stretching, or other orien-

tation processes, to induce a high degree of molecular orientation;

12. that, for example, while the low density polyethylene film in the Chart[1] is produced by a blowing process which inherently produces a limited degree of molecular orientation and is therefore shrinkable, is not generally considered to be "shrinkable oriented film" but rather only "shrinkable film" since no special orientation process is utilized;

*   *   *   *   *   *

14. that, as shown by the data in the Shrink Tension Range column of the chart on Properties of Shrink Films, the Dreyfus et al limitation of "high shrink energy, e. g. 100 to 500 p. s. i.," includes all of the nine types of shrinkable film except low density polyethylene which is not considered to be an "oriented film";

15. that, the Sternau disclosure of a "shrinkable oriented film" would generally be understood in the film manufacturing and utilization industries to include all of the nine types of shrinkable film shown in the said chart except low density polyethylene;

16. that, therefore, the Sternau disclosure of a "shrinkable oriented film" is identical to the Dreyfus disclosure of "heat shrinkable oriented polymer" and to the limitation of "high shrink energy, e. g. 100 to 500 p. s. i."; and the disclosures of each application would lead persons of ordinary skill in the film manufacturing and utilization industries to use the same types of shrinkable film.

Arrayed against this evidence is page 488 of Modern Plastics Encyclopedia (1964 ed.) which reads in pertinent part:

> In general, however, blown film is characterized by good physical properties and gives a film that is equally oriented with and across the direction of extrusion (thereby producing some increase in strength). This orientation, although it is not great, can also cause the film to shrink on heating, for possible use in shrink packaging applications.

In view of the burden imposed upon Sternau, as copier of the claim constituting the count from the Dreyfus patent, we are not persuaded that the limitation as to a film of a high shrink energy polymer is inherently supported by Sternau. The foregoing passage from Modern Plastics indicates that low density, hot-blown polyethylene is both heat shrinkable and oriented, the latter albeit to a lesser extent than other types of oriented films. The fact that the orientation is not great may mean that it is not a preferred film for shrink packaging but this is immaterial. Moreover, the Lowry article cited by Sternau indicates that low-density polyethylene is used for shrink packaging. Thus, we are not sufficiently convinced that low density, hot-blown polyethylene is not considered by those in the art to be a heat shrinkable, oriented film.

We think it is apparent from the foregoing that Sternau has not discharged the burden which the law imposes on one in his position. Accordingly, the decision of the Board of Patent Interferences is reversed.

Reversed.

MARTIN, Judge (concurring, with whom SMITH, Judge, joins).

I am unwilling to assume that Sternau discloses a high shrink energy polymer in deciding whether he can support the limitation of a "relatively elastic edge." As I see it, if we make that assumption, a "relatively elastic edge" inherently must be formed in Sternau.

However, I agree with the majority that Sternau cannot make the limitation "a film of a high shrink energy polymer." In my view, an analysis of the facts relating to that limitation shows the board erred in failing to appreciate the distinction between the types of polymers called for in Dreyfus by the above limitation as

1. The chart, which sets forth data on properties of shrink films, appears in an article by Robert D. Lowry in Modern Plastic Packaging Encyclopedia 223 (1963 ed.).

against the polymers Sternau contemplated under such terms as "shrinkable oriented films" and "transparent oriented plastic sheet." I make no intimation as to what Sternau in fact may be entitled.