25 C.C.P.A. (Patents)

**PEW v. GARD et al.**

**Patent Appeal No. 3992.**

Court of Customs and Patent Appeals.

June 27, 1938.

Frank S. Busser, of Philadelphia, Pa., for appellant.

Charles M. Thomas and Clarence O. McKay, both of Washington, D. C., and Philip Subkow, of Los Angeles, Cal., for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of the subject matter defined in the counts in issue— Nos. 1 and 2—to Jean Delattre Seguy, one of the appellees.

The invention in issue relates to a process of cracking mineral oil, and particularly to the drying of oil vapors by suddenly reducing the pressure thereon, in the manner set forth in the involved counts.

Count 1 is illustrative of the appealed counts. It reads:

"1. The process of cracking a mineral oil charging stock which comprises vaporizing the oil under a substantial superatmospheric pressure, *drying the oil after it has expanded into vapor by suddenly reducing the pressure thereon not less than 50 pounds per square inch to the extent required to bring the temperature above the saturation point for the reduced pressure,* then heating the oil vapors under the reduced pressure to a cracking temperature and cracking the vapors, and then cooling and fractionating the vapors." (Italics ours.)

The interference is between appellant's patent No.1,910,812, issued May 23, 1933, on an application, No.405,871, filed November 9, 1929, and appellee Seguy's application No.242,554, filed December 3, 1931, a renewal of his application filed December 27, 1927.

Subsequent to the issuance of appellant's patent, Seguy copied claims 1 and 2 thereof in the ex parte prosecution of his application. Those claims correspond to the counts in issue. The Primary Examiner held that Seguy could not make them. On appeal, the Board of Appeals reversed the decision of the Primary Examiner, and held that appellee could make the claims.

Thereafter, an interference was declared between appellant's patent and appellee Seguy's application. Later the ap-

plication of Earle W. Gard and Blair G. Aldridge, No. 351,338, filed March 30, 1929, was added to the interference.

Due to the fact that in his preliminary statement appellant's alleged date of conception of the invention was subsequent to the filing dates of appellee Seguy and the parties Gard and Aldridge, and as the preliminary statement of Gard and Aldridge contained an alleged date of conception which was subsequent to the filing date of appellee Seguy, the Examiner of Interferences entered an order against the parties Gard and Aldridge and appellant Pew to show cause why judgment on the record should not be entered against them. The Examiner of Interferences also stated in his order that appellant's alleged date of conception in his preliminary statement failed to overcome the filing date of the parties Gard and Aldridge. Thereupon, appellant and the parties Gard and Aldridge moved to dissolve the interference on the ground that Seguy was not entitled to make the claims constituting the counts in issue. Appellant Pew also moved to dissolve the interference as to the parties Gard and Aldridge on the ground that they were not entitled to make the counts in issue. Those motions were overruled by the Primary Examiner. Appellant and the parties Gard and Aldridge having failed to make sufficient showing why judgment on the record should not be entered against them, the Examiner of Interferences awarded priority of invention of the subject matter defined in the counts in issue to appellee Seguy.

From the decision of the Examiner of Interferences, appellant Pew and the parties Gard and Aldridge appealed to the Board of Appeals, each claiming that appellee Seguy was not entitled to make the counts. No issue as to the right of the parties Gard and Aldridge to make the counts was raised by Pew in his appeal to the board.

The Board of Appeals affirmed the decision of the Examiner of Interferences holding that appellee Seguy could make the claims constituting the counts in issue, and that he was entitled to an award of priority.

The parties Gard and Aldridge did not appeal to this court from the decision of the Board of Appeals; accordingly, the only parties to this appeal are the appellant Pew and the appellee Seguy, and the sole issue presented by the reasons of appeal is whether appellee is entitled to make the claims constituting the counts in issue.

In the course of its decision, the Board of Appeals made the following statement:

"Pew, neither in his notice of appeal nor in his brief, attacks the right of Gard et al. to make the counts. Since he is the only one that has questioned such right below and since the dates alleged in his preliminary statement are subsequent to the filing date of Gard et al., it follows that Pew cannot prevail in this proceeding no matter what our decision may be as to the right of Seguy to make the claims."

Although no motion has been filed in this court to dismiss appellant's appeal, counsel for appellee Seguy have argued at considerable length that, as the issue of priority of invention as between appellant and the parties Gard and Aldridge was not raised by appellant before the Board of Appeals, the board was clearly right in stating that appellant could not prevail in this proceeding, regardless of Seguy's right to make the counts.

Counsel for appellant contends that no judgment was entered by the Examiner of Interferences awarding priority of invention to Gard and Aldridge as against appellant; that, therefore, it was unnecessary for appellant to raise the issue before the Board of Appeals as to the right of the parties Gard and Aldridge to make the counts; and that, should appellant be awarded priority of invention by this court, the interference will continue in the Patent Office as between appellant and the parties Gard and Aldridge.

Although the Board of Appeals stated in the quoted excerpt from its decision that, as appellant Pew had failed to raise the question of the right of the parties Gard and Aldridge to make the counts and as the date alleged in Pew's preliminary statement for conception of the invention was subsequent to the filing date of Gard and Aldridge, appellant could not prevail, regardless of its decision as to the right of appellee Seguy to make the counts, it, nevertheless, proceeded to determine that issue.

The question raised by counsel for appellee in their brief and in oral argument is an interesting one, but, due to the views we hold with regard to appellee Seguy's right to make the counts, we deem it unnecessary to discuss it.

The right of appellee Seguy to make the claims constituting the counts in issue de-

pends upon whether or not his application discloses the second step in the involved process; that is, as stated in the italicized portion of the quoted count, that of "drying the oil after it has expanded into vapor by suddenly reducing the pressure thereon *not less than 50 pounds per square inch to the extent required to bring the temperature above the saturation point for the reduced pressure.*" (Italics ours.) (It should be understood in the consideration of that question, that no mention is made in appellee Seguy's application of "drying the oil after it has expanded into vapor.")

The Board of Appeals was of opinion that the drying of the oil, as defined in the counts, was inherent in appellee Seguy's disclosure.

For the purpose of clarity, we reproduce the drawing in the application of Seguy.

Witness:

Stephen J. Rebora

Inventor:
Jean Delattre Seguy
By Frank L. Belknap
Atty:

In its decision, the Board of Appeals referred to its decision in the ex parte prosecution of appellee Seguy's application, stated that it had there pointed out the "close analogy between the pressure and temperature conditions disclosed in the Pew patent and in the Seguy application and referred to one specific example given in the Seguy application in which a pressure drop at the valve 63 through which the vapors are admitted to the vapor phase cracking chambers [22] is at least 75 pounds," and further stated:

"We observed that Seguy did not state in his specification that this reduction in pressure caused drying of the vapors but stated that *we considered such action to be inherent in the specifically disclosed operation involving the pressures mentioned in this example*." (Italics ours.)

In further explanation of its views, the board said:

"In the Seguy process a large part of the vapors passing through the line 21 to the vapor phase cracking chambers 22 come from the lines 6 and 47 and pass through the reducing valve 48 in which the pressure reduction is from 350 pounds to 100 pounds per square inch. *Due to this large pressure drop, this part of the vapors would obviously be in a dry condition at the time it enters the line 21.* It is not understood that this fact is disputed by the appellants. While the other part of the vapors coming from the flash chamber 16 is not in an absolutely dry condition, we see no other logical deduction *than that on their mixture with the vapors coming from the line 47 and the further expansion of the mixture at the valve 63 to cause a pressure drop of 75 pounds,* the mixture of vapors passing to the vapor phase cracking chambers 22 will be dried to the extent required to bring the temperature above the saturation point for the reduced pressure." (Italics ours.)

In its decision in the ex parte prosecution of appellee Seguy's application, the Board of Appeals made the following statement:

"In one example, it is stated that the pressure in the reaction chamber 5 is 350 lbs., the pressure in the flash chamber 16 is 100 lbs., and the pressure in the vapor phase cracking chambers [22] is 25 lbs. or less. This means that there has been a reduction in pressure at the valve 63 which is at least 75 lbs."

Counsel for appellant contends that the step of drying the oil, as set forth in the involved counts, is not only not mentioned in appellee Seguy's application, but that it is not inherent in his disclosure, and that Seguy had no conception of the involved invention at the time of the filing of his application. It is argued by appellant's counsel that the burden was upon appellee Seguy to establish that the invention is inherent in his disclosure, and that all that it is necessary for appellant "to do is to refute such argument as may be advanced by Seguy to show that he is entitled to claim it. If we go only so far as to show that there is a substantial doubt whether in any of Seguy's possible operations the pressure drop at valve 63 will be 'to the extent required to bring the temperature above the saturation point for the reduced pressure,' we believe we are doing all that is incumbent upon us to do."

Counsel for appellant cited no authorities in support of his argument that the burden was upon appellee Seguy to demonstrate his right to make the counts.

Appellant is the junior party and the burden was upon him to establish priority of invention by a preponderance of the evidence.

Having alleged a date of conception long subsequent to appellee Seguy's filing date, appellant raised the ancillary issue of Seguy's right to make the counts by filing a motion to dissolve the interference. If the involved invention is inherent in Seguy's disclosure, as held by the Board of Appeals, he is entitled to make the counts. The issue of inherency was raised by appellant's motion to dissolve the interference. Accordingly, the burden was upon appellant, the moving party, to establish that the invention is not inherent in Seguy's disclosure. Coast, Jr., v. Dubbs, 88 F.2d 734, 24 C.C.P.A., Patents, 1023. See also Frank D. Williams v. Max Handschiegl, 48 F.2d 395, 397, 18 C.C.P.A., Patents, 1176; Harold J. McCreary v. Vladimir K. Zworykin, 55 F.2d 445, 19 C.C.P.A., Patents, 990, 997; Doherty v. Dubbs, 68 F.2d 373, 21 C.C.P.A., Patents, 807, 813.

The Board of Appeals expressly called attention to the fact that appellant submitted no evidence to establish that the involved process is not inherent in appellee Seguy's disclosure.

In this court, counsel for appellant has presented argumentative matter, technical

in character, as a substitute for evidence in an effort to demonstrate that the Board of Appeals erred in holding that a pressure drop of 75 pounds at valve 63 in appellee Seguy's disclosure would be sufficient to dry the mixture of vapors passing to the vapor phase cracking chambers 22 "to the extent required to bring the temperature above the saturation point for the reduced pressure," as stated in the counts.

In his application appellee stated that—

"Another method of operating the invention would be to *close the valves 7, 44 and 46 and pass all of the vapors through line 47, using the valve 48 as a pressure reducing valve.*

\* \* \* \* \* \* \* \* \*

"In all of the various methods above referred to, the oil may be subjected to a pressure of say 200 Lbs. or more in the coil 2 and the chamber 5. The pressure in the chamber 16 and the dephlegmator 8 and the chambers 22 and the dephlegmator 27 and its associated parts may be substantially lower than the pressure in the coil—say from 100 Lbs. down to atmospheric pressure. *Another manner of carrying out each of the foregoing methods would be to have a pressure of say 350 Lbs. on the coil 2 and chamber 5, a pressure of say 100 Lbs. on the chamber 16 and dephlegmator 8 (in case the latter is not cut out of the system) while by regulating the reducing valve 63 on line 21 from 25 lbs. say to atmospheric pressure may be maintained on the chambers 22 and dephlegmator 27, or if desired, in the last mentioned case, a vacuum may be maintained in the chambers 22 by connecting a suitable vacuum pump, not shown, to the receiver 30.*

"In carrying out any of the methods above described, the degree of cracking in the liquid-vapor phase part of the system, to-wit, in the coil 2 and chamber 5, may be independently controlled relative to the degree of cracking in the vapor phase cracking chambers 22. Transfer temperature in the coil 2 may be say 850° F., more or less, while the temperature in the chambers 22 may be 1000° F. more or less." (Italics ours.)

The Board of Appeals held, and correctly so we think, that, in one of the methods suggested in appellee Seguy's application of operating his oil cracking system, oil is subjected to a pressure of 350 pounds in coil 2 and chamber 5. Oil vapors from chamber 5 pass through vapor line 6 through branch 47 into reducing valve 48, where the pressure is reduced from 350 pounds to 100 pounds per square inch. The vapors then pass into line 21, where they are mixed with wet vapors from chamber 16. The mixed vapors pass through reducing valve 63, where they are subjected to a reduction in pressure of at least 75 pounds per square inch. They then pass to the vapor phase cracking chambers 22.

That the operation thus described is disclosed in appellee Seguy's application is not seriously questioned by counsel for appellant.

The board further held that, due to their having been subjected to a sudden reduction in pressure from 350 pounds to 100 pounds per square inch in reducing valve 48, the oil vapors passing from branch 47 into line 21 were in a dry condition (this holding is not questioned by counsel for appellant), and that, by mixing the wet vapors from chamber 16 with the dry vapors from branch 47 and subjecting the mixture to a reduction in pressure of at least 75 pounds in reducing valve 63, the mixed vapors would be dried "to the extent required to bring the temperature above the saturation point for the reduced pressure," as called for in the appealed counts.

Counsel for appellant contends that the subjection of the mixed vapors to a sudden reduction in pressure of 75 pounds per square inch in reducing valve 63 would not dry them to the extent called for in the involved counts.

We have heretofore called attention to the fact that counsel for appellant has submitted no evidence in support of his contention, but relies entirely upon arguments, technical in character, to demonstrate the correctness of his position.

■■ Whether subjecting the mixed oil vapors to a sudden reduction in pressure of 75 pounds per square inch in reducing valve 63 is sufficient to dry them to the extent called for in the involved count is a question of fact, and the burden was upon appellant to establish that such reduction in pressure was not sufficient to dry them to the extent required. Counsel for appellant having failed to introduce any evidence on the subject, and as it does not appear to us from a consideration of the facts of record and the arguments of counsel that the Board of Appeals erred in holding that by mixing the wet and dry vapors in line 21 and then subjecting the mixed vapors to a reduction in pressure of 75 pounds in

reducing valve 63 they would be dried to the extent called for in the involved counts, we must hold that appellee Seguy is entitled to make the claims constituting the counts in issue.

It may be said in conclusion that, in our consideration of the issues, we have assumed that the contention of counsel for appellant relative to the meaning of the involved counts is correct; that is, that the counts call for a sufficient reduction in pressure on the oil, vapors "to bring the temperature above the saturation point for the reduced pressure."

The decision of the Board of Appeals is affirmed.

Affirmed.