Elias **SNITZER**, Appellant,

v.

Howard W. **ETZEL** et al., Appellees.

**Patent Appeal No. 75–561.**

United States Court of Customs and Patent Appeals.

April 8, 1976.

Donald R. Dunner, Lane, Aitken, Dunner & Ziems, Washington, D. C., atty. of record, for appellant. William C. Nealon, Southbridge, Mass., Richard L. Aitken, Washington, D. C., of counsel.

Joseph A. Hill, Vito J. DiPietro, Washington, D. C., attys. of record, for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

MILLER, Judge.

This appeal is from the decision [1] of the Patent and Trademark Office Board of Patent Interferences awarding priority of invention of the two counts in issue to the junior party, Etzel et al. (Etzel). The counts were copied by Snitzer [2] from Etzel's patent No. 3,208,009,[3] issued September 21, 1965. The ultimate question, which the board decided against Snitzer, is whether senior party-appellant can make the counts. We affirm.

### Subject Matter of the Counts

The invention is a lasing element of a glass laser having a clear glass as the laser-active host medium and trivalent ytterbium ions as the laser-active ingredient. Lasers operate by employing suitable bands of optical pumping energy to excite electrons of certain atoms or ions to higher energy levels. These atoms or ions and a host material (usually a gas or solid) in which they are contained form the "lasing element." The atoms (or ions) and host material combination will act as a lasing element only if a significantly greater number of atoms or ions have electrons in the higher energy

---

1. In interference No. 96,025.

2. In an amendment filed April 28, 1966, to his application serial No. 168,012, filed January 16, 1962, a continuation-in-part of application serial No. 148,204, filed October 27, 1961, the benefit of whose filing date was accorded to Snitzer for purposes of the interference.

3. On application serial No. 191,381, filed April 30, 1962.

levels rather than in the lower levels (*i. e.* a state of "inverted population," since at equilibrium the lower energy levels are more heavily populated than the higher energy levels). Laser activity occurs when the lasing element, with atoms or ions in a state of inverted population, emits radiation as the electrons descend from the higher, non-equilibrium energy levels to lower levels. Fluorescence, or the emission of radiation in response to the absorption of radiation from some other source, is therefore one requirement of all materials which form a lasing element. However, in fabricating solid lasers, fluorescence alone is not enough to qualify a material as laser-active, since other properties, such as specific higher energy levels and the deviation of the fluorescence from the laser emissive wavelength, also have an effect upon whether a material will lase.

The counts are drawn to a lasing element, consisting essentially of a clear glass activated with trivalent ytterbium ions, which absorbs optical pumping energy at a specific range of wavelengths and exhibits stimulated emission of radiation in a bandwidth centered around a specific wavelength. Count 1 is illustrative and reads as follows:

1. In a laser, a solid luminescent sensitive element of optical regenerative configuration and consisting essentially of a clear glass activated with trivalent ytterbium ions to absorb optical pumping energy in the near infrared region at wavelengths of from 914 to 974 mu and exhibit stimulated emission of radiation in the near infrared region in a waveband of about 6 mu width which has its optical center at 1.015 microns.

Count 2 differs from count 1 solely in that it recites a "clear *silicate* glass." (Emphasis added.)

### Background

In a prior appeal[4] in this same interference proceeding, this court held that Snit-

zer's disclosure describes trivalent ytterbium ions contained in a clear glass host medium as the lasing element. Although Etzel had argued that Snitzer's disclosure is speculative because it teaches the suitability of several ions subsequently admitted not to have been used successfully, the court concluded that since the trivalent ytterbium ions are operable, the fact that other listed ions are inoperable is irrelevant in determining whether operable ions are described. However, the court remanded the case to the board to consider whether Snitzer's disclosure described the terminal portion of the counts (*viz,* "to absorb optical pumping energy in the near infrared region at wavelengths of from 914 to 974 mu and exhibit stimulated emission of radiation in the near infrared region in a waveband of about 6 mu width which has its optical center at 1.015 microns") and whether the disclosure would have enabled one skilled in the art to practice the invention recited in the counts. The court stated that the board on remand should consider

the sufficiency of appellant's [Snitzer's] specification with respect to the terminal portion of the counts in light of the recent description requirement cases of this court. The board should also consider the sufficiency of appellant's specification as an enabling disclosure of how to make and use the invention of the counts starting with the premise that the use of trivalent ytterbium as a laser-active ion with a glass host is described as such in appellant's specification. [*Id.,* 465 F.2d at 903, 59 CCPA at 1247, 175 USPQ at 111.]

### The Proceedings Below

On remand, the board first considered whether Snitzer's disclosure described the terminal portion of the counts. It found that this portion is neither expressly described in the disclosure nor suggested by

---

4. *Snitzer v. Etzel,* 465 F.2d 899, 59 CCPA 1242, 175 USPQ 108 (1972). (In the CCPA report, the subject matter from the paragraph after the numbered paragraph 12, on page 1245, up to

"*Conclusions*", on page 1246, should be repositioned after the second paragraph on page 1247.)

the prior art and evidence of record. It also found no evidence that the parameters applicable to lasers known at the time Snitzer's application was filed could be applied to trivalent ytterbium glass lasers without undue experimentation.

The board next considered whether Snitzer's disclosure would have been enabling. It found that while one skilled in the art, using Snitzer's disclosure, could determine the characteristics of the pumping source to obtain laser action with a trivalent ytterbium glass laser, there was still not enough information to construct an operable trivalent ytterbium glass laser without undue experimentation. The board pointed to Snitzer's own affidavit under 37 CFR 1.132 to show the unpredictability, for successful lasing action, of activated glass-like host material. It also found that operating parameters of such a laser, which functions at optical frequencies measured in millimicrons, are so "critically interrelated" that undue experimentation would be necessary without their precise specification. Finally, it noted that Etzel requires operation at low temperatures and that this is not disclosed by Snitzer.

Accordingly, the board held that Snitzer's disclosure did not describe the terminal portion of the counts and that it was not an enabling disclosure.

### OPINION

The substantive issues are whether appellant's disclosure would have enabled one skilled in the art to practice the invention of the counts and whether it describes the terminal portion of the counts. Before reaching these issues, however, we must first determine which party has the burden of proof, a question on which the parties disagree.

#### Burden of Proof

■ Appellant contends that the burden of proof on the enablement issue is on Etzel, as the junior party, whose motion to dissolve on this issue was denied. We cannot agree. Appellant, as the party copying claims from a patent for the purpose of

instituting interference proceedings, must show by clear and convincing evidence that his disclosure supports the counts. *Tummers v. Kleimack,* 455 F.2d 566, 59 CCPA 846, 172 USPQ 592 (1972); *Gubelmann v. Gang,* 408 F.2d 758, 56 CCPA 1013, 161 USPQ 216 (1969); *Dreyfus v. Sternau,* 357 F.2d 411, 53 CCPA 1050, 149 USPQ 63 (1966); *Crome v. Morrogh,* 239 F.2d 390, 44 CCPA 704, 112 USPQ 49 (1956).

The denial of appellees' motion to dissolve did not shift the burden. As this court stated in *Tummers v. Kleimack, supra,* 455 F.2d at 569, 59 CCPA at 850, 172 USPQ at 594:

> We find absolutely no merit to appellant's contention that the examiner's decision denying appellees' motion to dissolve switched the burden to appellees. The examiner's decision merely left the issue for the board to resolve after testimony was taken. ·

Although in the instant case no testimony was taken after the motion to dissolve was denied, the "examiner's decision merely left the issue for the board to resolve."

Appellant has cited a number of cases in his brief and at the oral hearing for the proposition that Etzel has the burden of proof on the enablement issue. However, none of these cases is helpful to appellant. In *Field v. Knowles,* 183 F.2d 593, 37 CCPA 1211, 86 USPQ 373 (1950), the issue was inoperability—not enablement—of the disclosure of the application placed in interference. This court stated that the disclosure is presumed to be operable. Although the court said that the junior party had the burden of proof by a preponderance of the evidence on this issue, it should be noted that it was the junior party, Field, who raised the issue. In *Nicolaou v. Cooperman,* 438 F.2d 993, 996, 58 CCPA 938, 941, 168 USPQ 717, 719 (1971), this court clearly indicated that the burden of proof on the issue of operability rests on the party raising it, whether he is the junior or senior party. Similarly, the party "raising" the interference by copying claims has the burden of proof on enablement. In *Coast v. Dubbs,* 88 F.2d 734, 737, 24 CCPA 1023,

1028, 33 USPQ 91, 94 (1937), this court considered the question of "the burden of proof relative to inherency, and inoperativeness as it bears upon inherency." However, the court's discussion of the burden of proof on inherency was dictum, since it found that Dubbs, senior party and copier, had established a prima facie showing of inherency:

Under all the facts of this case, we think a *prima facie* showing of inherency was made in the application of Dubbs, and that it was, therefore, incumbent upon Coast as the junior party to show lack of inherency . . . . [*Id.* 88 F.2d at 738, 24 CCPA at 1030, 33 USPQ at 96.]

■ The burden of proof (by clear and convincing evidence) on the description issue also lies with appellant, as the party copying claims from a patent. At oral hearing, appellant argued that the burden rests upon appellees, citing *Pew v. Gard,* 97 F.2d 591, 25 CCPA 1326, 38 USPQ 115 (1938). In *Pew,* which involved the issue of whether the senior party-copier inherently disclosed a limitation of the counts, this court held that the burden of proof was on the junior party (Pew), who had raised the issue of inherency by filing a motion to dissolve the interference with respect to the senior party's right to make the counts. This assignment of the burden of proof, however, has not been followed in the later cases. For example, in *Dreyfus v. Sternau, supra,* which also involved the issue of inherency in the disclosure of the senior party-copier raised by the junior party on a motion to dissolve the interference, this court said:

By copying claims from an issued patent, and lacking express support for the limitations found therein, Sternau was faced with a twofold burden. First, one copying a claim from a patent for the purpose of instituting interference proceedings must show that his application clearly supports the count. . . . There must be no doubt that an application discloses each and every material limitation of the claims and all doubts must be resolved against the copier. . . . Second, where support must be

based on an inherent disclosure, it is not sufficient that a person following the disclosure might obtain the result set forth in the counts; it must inevitably happen. [357 F.2d at 415, 53 CCPA at 1054, 149 USPQ at 66.]

*Accord, Tummers v. Kleimack, supra, Gubelmann v. Gang, supra.*

### Description Issue

Appellant argues that the terminal portion of the counts merely describes inherent characteristics of the trivalent ytterbium glass laser. He points to his affidavit under 37 CFR 1.205 and to a publication by D. McClure (D. McClure, *Electronic Spectra of Molecules and Ions in Crystals, Part II, Spectra of Ions in Crystals,* 9 Solid State Physics 454–74 (Seitz & Turnbull ed. 1959)) for support of this position. Relevant portions of the affidavit, which includes a discussion of McClure, are set forth below:

In summary of the foregoing factual matters, McClure in Fig. 18B on page 457 of Exhibit A shows trivalent ytterbium as having essentially only two energy levels; namely, an upper $^2F_{5/2}$ energy level at approximately 10300cm$^{-1}$ (972 millimicrons) and a ground state $^2F_{7/2}$ energy level. While he indicates that trivalent ytterbium may have higher absorption energy levels between approximately 37000cm$^{-1}$ and 43000cm$^{-1}$, he acknowledges that these ultraviolet energy level bands are not well substantiated and it is noted that they are not shown in either the earlier ELýashevich [2 M. Elýashevich, *Spectra of the Rare Earths* 497–538 (U.S. Joint Publications Research Service transl. 1961)] Fig. 91 energy level diagram (Exhibit B, page 538) or the later Dieke [G. Dieke, *Spectroscopic Observations on Maser Materials,* ADVANCES IN QUANTUM ELECTRONICS 164–86 (J. Singer ed. 1961)] Fig. 4 energy level diagram (Exhibit E, page 170). The Elýashevich energy level diagram of Fig. 91 on page 538 of Exhibit B likewise shows trivalent ytterbium as having only an upper $^2F_{5/2}$ energy level at approximately 10300cm$^{-1}$ (972 millimicrons) and

a ground state $^2F_{7/2}$ level. Dieke in Fig. 4 on page 170 of Exhibit E likewise shows trivalent ytterbium as having only an upper $^2F_{5/2}$ energy level in the vicinity of 10000cm—$^1$ [1000 millimicrons] and a ground state $^2F_{7/2}$ level. It is evident from these facts [concerning the upper energy level] that if trivalent ytterbium is to fluoresce, it must be excited or pumped with infrared energy within the range of 9700cm—$^1$ to 11300cm—$^1$ (approximately 1030 millimicrons to 885 millimicrons).[5] This is the range of values set forth in the ELÿashevich table on page 505 of Exhibit B which, as noted above, corresponds closely with the range of absorptive wavelength values graphically illustrated by Crosby [G. Crosby and M. Kasha, *Intramolecular Energy Transfer in Ytterbium Organic Chelates*, 10 SPECTROCHIMICA ACTA 377–82 (1958)] in Fig. 2 on page 379 of Exhibit C for trivalent ytterbium in a clear solid glass. McClure on page 473 of Exhibit A reports for ytterbium in the hydrated chloride specific absorption lines of 972 millimicrons and 976 millimicrons as two of the three crystal field components expected for J=5/2 and with the third component located perhaps several hundred cm—$^1$ away. Brauer and Brauer [E. Brauer and P. Brauer, *Über leuchtende Übergänge innerhalb des Grundterm-Multipletts der dreiwertigen Ionen der Seltenen Erden*, 34 NATURWISSEN-SCHAFTEN 120–21 (1947)] in Exhibit D report an absorption line of about 970 millimicrons. Trivalent ytterbium is unique among the rare earth elements in the sense that as is quite evident from its energy level diagram, it must be excited or pumped by infrared wavelength energy of approximately 900 to 1000 millimicrons wavelength range. Having only one $^2F_{5/2}$ upper energy level from which it may fluoresce by transition to its ground state $^2F_{7/2}$ level, trivalent ytterbium is further unique in that its emission spectrum must be at an infrared wavelength near 1 micron (1000 millimicrons). Crosby on pages 379 and 380 of Exhibit C reports an emission line at 971 millimicrons with a line width ±4 millimicrons, and Brauer and Brauer report emission lines at approximately 1.025 microns and 0.99 micron according to splitting permitted by the quantum number J as influenced by the field of the host material.

Such evidence at most supports a finding that the inherent operating characteristics of the trivalent ytterbium glass laser include (1) a pumping energy within the wavelength range of approximately 885 mu (.885 micron) to 1030 mu (1.030 microns) and (2) emission spectra with an emission line at 971 mu (.971 micron) having a line width of ±4 mu, or with emission lines at approximately 1.025 microns and .99 micron.

We are not convinced that this evidence of inherency, together with appellant's disclosure, would have clearly shown one skilled in the art the subject matter of the terminal portion of the counts. With respect to the emission spectra, the evidence does not show a "waveband of about 6 mu width which has its optical center at 1.015 microns" for a trivalent ytterbium glass laser. Moreover, even assuming that the pumping energy recited in the counts is "described" (through inherency) by the wavelength range of 885 mu to 1030 mu, appellant has failed to show that this range will necessarily produce the emission spectra recited in the counts, particularly in view of the board's finding that the operating parameters are "critically interrelated." There is no evidence that the necessary and only reasonable construction to be given the disclosure by one skilled in the art lends clear support to the claimed interrelationship between the pumping energy and emission spectra. *Storchheim v. Daugherty*, 410 F.2d 1393, 56 CCPA 1147, 161 USPQ 679 (1969).

Appellant further argues that the McClure publication, which was incorporat-

---

5. The affidavit states that the breadth of the range of the upper energy level is due to the electric field of the host material.

ed by reference in his application, expressly discloses the pumping energy and emission spectra for trivalent ytterbium ions. However, McClure discloses only two specific pumping energy wavelengths for trivalent ytterbium in a crystalline host material, and only one of these is within the claimed range. With regard to the emission spectra, appellant admits that McClure does not specifically disclose the spectra recited in the counts.

Accordingly, the description issue must be resolved against the copier.

### Enablement Issue

■ Although appellant has shown that one skilled in the art, having appellant's disclosure and the McClure publication before him, could have determined characteristics of a pumping source for a trivalent ytterbium glass laser, we are not convinced that undue experimentation would not be required to make and use a laser having the element recited in the counts. As well said by the board:

> The operating parameters of devices of the nature here-involved which function at optical frequencies measured in millimicrons are critically interrelated and without precise specification of all such parameters excessive experimentation becomes necessary.

Appellant argues that once the broad concept of the ytterbium glass laser was invented, it was the task for the routineer to measure inherent characteristics and to select operating parameters. However, as earlier concluded, appellant has not sustained his burden of showing that the claimed characteristics are inherent in a trivalent ytterbium glass laser. Moreover, the evidence shows that the electric field of the host material will affect the pumping energy wavelengths and the fluorescent emission lines of the laser material. Appellant has provided no guidance on how the host material affects either the pumping

energy wavelengths or the emission spectra. Without such guidance, we do not see how one skilled in the art could have determined which trivalent ytterbium-clear glass combinations would produce the characteristics recited in the counts without undue experimentation.

Appellant argues that the issue of unpredictability of operation of a glass laser, as expressed in his affidavit under 37 CFR 1.132, is of no moment since appellant disclosed a trivalent ytterbium glass laser. However, regardless of the merits of the unpredictability issue,[6] appellant has provided no guidance for one skilled in the art to select the specific operating parameters recited in the counts. *In re Rainer,* 347 F.2d 574, 52 CCPA 1593, 146 USPQ 218 (1965).

For the foregoing reasons, we hold that senior party-appellant cannot make the counts.

Accordingly, the decision of the board is *affirmed.*

*AFFIRMED.*

---

**6.** Appellees argue that due to the speculative nature of appellant's disclosure, as shown by the admission by appellant that some of the listed ions will not be suitable in a glass-like host material to attain lasing action, appellant's disclosure is nonenabling. However, we find it unnecessary to consider this argument.