**Bob O. BURSON, Appellant,**

v.

**Thomas F. CARMICHAEL, Appellee.**

**Appeal No. 83–1233.**

United States Court of Appeals, Federal Circuit.

April 3, 1984.

Donald R. Dunner, Washington, D.C., argued for appellant. With him on brief was Barry W. Graham, Washington, D.C.

William L. Anthony, Jr., San Francisco, Cal., argued for appellee.

Before MARKEY, Chief Judge, DAVIS, Circuit Judge, and FORD, Judge.[*]

* The Honorable Morgan Ford, Judge, United States Court of International Trade, sitting by designation.

**850**

MARKEY, Chief Judge.

Appeal from a decision of the Patent and Trademark Office (PTO) Board of Patent Interferences (Board) awarding priority of counts 5–8 to senior party Carmichael. We *reverse.*

*Background*

The following time line summarizes the relevant dates:

Carmichael filed application S.N. 460,271 on April 12, 1974, claiming a capacitor discharge ignition system. On February 23, 1976, Carmichael filed application S.N. 660,-122, also claiming a capacitor discharge ignition system. U.S. patent 4,056,088 ('088) issued November 1, 1977, on S.N. 460,271. Carmichael filed application S.N. 888,557, a continuation of S.N. 660,122, on March 20, 1978, and abandoned S.N. 660,-122.

Burson alleges conception on January 8, 1974, and reduction to practice two days later of a capacitor discharge ignition system. He filed application S.N. 572,908 on April 29, 1975. On July 19, 1977, U.S. patent 4,036,201 ('201) issued on that application.

On July 18, 1978, Carmichael amended S.N. 888,557, adding claims copied from Burson's '201 patent. The Board mailed a

declaration of interference on February 8, 1979, naming Carmichael as senior party and according S.N. 888,557 the benefit of the filing dates of S.N. 660,122 and S.N. 460,271.

On April 25, 1983, after final hearing before the board, Carmichael was permitted to amend abandoned S.N. 660,122, adding a statement that that application was a continuation in part (CIP) of S.N. 460,271.[1] Application S.N. 460,271 is therefore referred to here as the "grandparent", and S.N. 660,122 is referred to as the "parent" of application S.N. 888,557.

As above indicated, the board awarded priority to Carmichael.

*Invention*

The invention of the counts (see Appendix to this opinion) is best understood by reference to figures 1 and 3 from Burson's '201 patent.

---

**1.** The legality of that procedure was not argued before the court and will not therefore be discussed.

FIG. I

FIG. 3

A breakerless capacitor discharge ignition system has a permanent magnet 14 mounted in a nonmagnetic flywheel 22. The flywheel 22 is attached by shaft 24 to an engine (not shown) and rotates with the engine shaft.

A magnetic core 36 has poles 40, 42, and 44 spaced along the circular path of magnet 14. The center pole 42 carries a primary winding 48, surrounded by a secondary winding 50, and a charging winding 52 spaced therefrom.

The invention of the counts is represented electrically by figure 7 of the '201 patent.

FIG. 7

Referring to Figure 7, magnetic flux flows during the first half cycle of operation from the magnet's north to its south pole (down core pole 40 and up core pole 42) inducing voltage $E_G$ in charging winding 52 and voltage $E_p$ in primary winding 48. The positive voltage $E_G$ passes through diode 82 to charge capacitor 66 to voltage $E_C$. During the second half cycle of operation, magnetic flux flows down core pole 42 and up core pole 44 and voltage $E_p$ becomes positive, with respect to control electrode 86 of silicon control rectifier (SCR) 68, providing a trigger signal to

turn SCR 68 "on". That "on" condition allows voltage $E_C$, held in capacitor 66, to discharge in the form of current flowing through primary winding 48. That burst of current generates magnetic flux which induces a high output voltage across secondary winding 50 to fire spark plug 90.

Because charging winding 52 acts as a shorting coil for the primary flux, it tends to reduce the generation of a high voltage output in secondary winding 50 during discharge of capacitor 66. To minimize that effect, charging winding 52 is physically offset from primary winding 48 and secondary winding 50, thus reducing flux linkage with those windings.

### Carmichael's Grandparent

The grandparent on which Carmichael relies for its April 12, 1974 filing date, discloses a capacitor discharge ignition system best represented by figure 1 of the '088 patent.

A U-shaped core 22 has a pole 22a (carrying a primary winding 24p and a secondary winding 24s) and a pole 22b (carrying a charging winding 26). A flywheel 16 carries the poles 18 and 20 of a magnet past core poles 22a and 22b as the flywheel rotates with an engine shaft.

The system disclosed in the grandparent operates as does Burson's to fire a spark plug (28), and the parties agree that the two systems are electrically equivalent.

### Board Decision

Burson argued to the board, *inter alia,* that Carmichael is not entitled to the benefit of his grandparent's filing date because that application does not disclose a charging and primary winding wound on "one core portion". The board decided that Carmichael was entitled to rely on the grandparent's filing date because "one core portion" was not restricted to one pole.

### Issues [2]

(1) Whether Carmichael is entitled to rely on the filing date of his grandparent application.

(2) Whether remand is appropriate.

### OPINION

#### 1. Carmichael's Filing Date

■ Having copied the claims from Burson's '201 patent to invoke an interference, Carmichael must show by clear and convincing evidence that the disclosure on which he relies supports the copied claims which became the interference counts. *Snitzer v. Etzel,* 531 F.2d 1062, 1063, 189 USPQ 415, 417 (CCPA 1976).

■ Carmichael relies on the grandparent's disclosure, *supra,* of a U-shaped magnetic core with charging and primary windings on different poles as support for the limitation of count 5 that those windings be on "one core portion." Thus Carmichael urges a broad, and Burson a narrow, interpretation of "one core portion". Resolu-

tion of that issue determines whether Carmichael can rely on his grandparent's filing date.

To determine the meaning of "one core portion", resort must be had first to the '201 patent. *Sockman v. Switzer,* 379 F.2d 996, 997, 54 CCPA 1563, 154 USPQ 105, 106 (1967).

The figures of the '201 patent, *supra,* and its description of the illustrated embodiment show and describe a single pole carrying the charging, primary, and secondary windings. Indeed, the entire thrust of Burson's '201 patent is a capacitor discharge ignition system mounted on a single pole of a magnetic core.

Carmichael points to this in the '201 patent:

[a] core of ferromagnetic material is mounted adjacent the path of the magnet and has *one pole or other portion* through which a changing amount of flux from the magnet passes each time the magnet moves past the core. (emphasis added).

Carmichael says "other portion" in that excerpt means "distinct from one pole," i.e., two poles. Burson says "other portion" means the interconnecting portion between the two poles of a U-shaped core. Carmichael's broad reading conflicts with, and is clearly not supported by, the '201 specification which is directed throughout to a single pole configuration.

Pointing to original claim 2 (cancelled during prosecution) which states "... said one portion of said core being one of said plurality of poles", Carmichael says the claim would be meaningless if "one core portion" means one pole. We disagree. Because "one core portion" is readable on either one pole or on the one interconnecting portion between two poles, that dependent claim is not meaningless.

Nor does a review of the relevant file history provide support for Carmichael's broad interpretation. In arguing that Bur-

---

**2.** Because issues (1) and (2) are dispositive, we need not and do not reach others presented by the parties.

son could have amended the claim to recite that all of the windings were on one pole, but intentionally chose broader language, Carmichael mischaracterizes Burson's intent. In response to the second office action Burson added the word "radially" to describe the offset between the primary and charging windings and thereby further defined "one core portion". The materiality of "radially" need not be reached but its addition undermines Carmichael's assertion that Burson chose broad language and intentionally failed to narrow it during prosecution.

In response to that second office action, Burson also stressed functional over structural aspects of his invention. Carmichael says that was an attempt to redirect the thrust of the invention, but Burson had already stressed the structural aspects in response to the first office action:

> The heart of Applicant's invention is a very simple capacitor discharge system comprised of only three coils all mounted on a single pole or other portion of a ferromagnetic core...

There is no requirement that arguments once made be repeated.

Lastly, Carmichael says his core is the functional equivalent of Burson's. The assertion misses the mark. The controlling issue is whether Carmichael's initial disclosure provides support for the copied claims and the specific limitation controlling that issue is structural, not functional.

Carmichael's parent application (filed February 23, 1976) did disclose charging and primary windings on a single pole. Carmichael did not restrict the claims in that application to a single pole but broadly claimed "at least one stator leg." Carmichael did not then recognize that the grandparent disclosure might arguably support a "single pole" claim. The parent application stated:

> This ignition system is *generally of the type disclosed* in my copending application for "Ignition System," Serial No. 460,271, filed April 12, 1974... (emphasis added).

When Carmichael first conceived that his parent could have been filed as a CIP of the grandparent is not of record. He filed the amendment asserting the CIP relationship on April 25, 1983, or more than seven years after he filed the parent. It is at best ironic that Carmichael now relies on a relationship which he says is apparent between the grandparent's disclosure and the count, when the relationship between the grandparent's disclosure and the claims of the parent went unrecognized by Carmichael for so long.

The record establishes that Carmichael failed to introduce clear and convincing evidence that "one core portion" must be read broadly, and that his grandparent thus supports the counts. Reliance on the grandparent's filing date, being thus foreclosed, the earliest filing date on which Carmichael can rely is that of the parent (February 23, 1976).

## 2. Remand

At oral argument, Carmichael requested remand if it were determined that he is not entitled to rely on the grandparent's filing date. Having relied on his senior party status, says Carmichael, he did not introduce evidence of his conception and reduction to practice.

Remand is appropriate when a senior party introduces evidence of conception and reduction to practice but the board does not determine sufficiency of that evidence. *Reiners v. Mehltretter*, 236 F.2d 418, 422, 43 CCPA 1019, 111 USPQ 97, 101 (1956). When, however, as here, a senior party introduces no evidence of his own conception and reduction to practice, introducing evidence, if any, solely in rebuttal of the junior party's evidence, the senior party is restricted to his earliest available filing date. *Miller v. House*, 353 F.2d 252, 253, 55 CCPA 863, 864, 147 USPQ 488, 489 (CCPA 1965); *Silvestri v. Grant*, 496 F.2d 593, 595, 181 USPQ 706, 707 (CCPA 1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1126, 43 L.Ed.2d 399, 184 USPQ 641 (1975).

With a full opportunity to introduce all evidence available to him, Carmichael

chose to rely upon the supposed weakness of Burson's case rather than the strength of his own. That approach having failed, he wants to start over by introducing evidence he says he could have earlier introduced. There is no support in law for repeated bites at the apple. On the contrary, the law whenever possible reaches for repose. We decline the suggestion that the case be remanded to permit introduction of evidence which Carmichael declined to introduce.

### Conclusion

Carmichael is not entitled to rely upon the filing date of his grandparent application and is restricted to his parent application's February 23, 1976 filing date. Because Burson's filing date is April 29, 1975, priority must be awarded to Burson.

REVERSED.

### Appendix

Counts 5–8 are:

COUNT 5

A capacitor discharge system for an internal combustion engine comprising

a permanent magnet means rotated about a circular path in synchronism with the operation of said engine,

a core of ferromagnetic material mounted adjacent said circular path and having one portion providing a path for the varying flux generated by the movement of said magnet means past said core,

a charging winding being offset from said primary and secondary windings [radially]* with respect to said circular path,

said charging winding and primary winding being wound on said one core portion such that the voltage induced therein by said varying flux each includes half wave voltages of opposite polarity,

a charging circuit including a capacitor connected across said charging winding and a diode poled to pass half wave voltages of one polarity for charging said capacitor and maintaining said capacitor charged when the voltage generated in said charging winding is opposite said one polarity;

circuit means connecting said capacitor with said primary winding for discharging said capacitor through said primary winding and including an electronic switch means having anode, cathode and control electrodes;

the anode-cathode junction of said switch means interconnecting the ends of said charging winding and said primary winding which are simultaneously at the same polarity,

said control electrode being connected to the other end of said primary winding, the polarity of which is opposite said same polarity, said switch means being nonconductive during the charging of said capacitor by said one polarity of the voltage generated in said charging coil and being rendered conductive by voltage generated in the primary winding opposite said same polarity whereby said capacitor is charged during one complete half cycle of voltage generated in the charging coil and discharged during the next half wave voltage generated in said charging winding.

COUNT 6

A capacitor discharge system for an internal combustion engine as set forth in count 5 in which said control electrode is connected by circuit means to the ends of both said primary winding and charging winding opposite to the ends of these windings interconnected by the cathode-anode junction of said electronic switch means.

COUNT 7

A capacitor discharge system as set forth in count 6 in which said circuit means connecting the control electrode to said primary and charging winding includes a resistor.

COUNT 8

A capacitor discharge system as set forth in count 7 in which said electrode switch means is a silicon control rectifier

---

* "radially" is present in Burson's patent claim 1 but was eliminated when the examiner granted

Carmichael's motion to amend.

and the control electrode thereof is the gate of said rectifier, said gate electrode and the ends of said charging winding and primary winding opposite said same polarity being connected to ground potential.

DAVIS, Circuit Judge, dissenting.

I am not persuaded that the Board of Patent Interferences erred when it held that, giving the counts the broadest reasonable interpretation, the phrase "one core portion" is not as limited as "one leg" or "one pole", but includes a U-shaped core. The Board based this reading on (a) the language of the count ("one core portion") which is broader than "pole" or "leg", and (b) prosecution history of the Burson patent, including the application, the original specification and claims, and the patent specification which shows that Burson intended "one core portion" to be broader than "one pole" or "one leg".[1] This is by no means an open-or-shut matter, and I see no adequate reason to reject the Board's reasoned conclusion.[2]

1. In the course of prosecution, Burson stated that "the heart" of his invention was a capacitor discharge ignition system comprised of only three coils all mounted on a single pole *"or other portion* of a ferromagnetic core". (Emphasis added)  The specification also says "one pole or other portion".

2. In view of the majority's disposition of the case, I do not reach the other issues argued by the parties.