**Peter J. DeGEORGE, et al., Appellants,**

v.

**Donald R. BERNIER, Appellee.**

**Appeal No. 84–1281.**

United States Court of Appeals, Federal Circuit.

July 19, 1985.

David W. Plant, Fish & Neave, New York City, argued, for appellants. With him on brief were Robert C. Morgan, Robert R. Jackson, and Douglas J. Gilbert, New York City.

Richard H. Smith, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued, for appellee. With him on brief was Richard L. Stroup and Gerald L. Moore, Los Gatos, Cal.

Before BALDWIN, Circuit Judge, and SKELTON and MILLER,* Senior Circuit Judges.

BALDWIN, Circuit Judge.

This appeal is from a decision of the Board of Patent Interferences (board) of the United States Patent and Trademark Office (PTO) awarding priority of counts 1 through 13 to junior-party Bernier. We reverse in part and vacate in part.

### Background

The senior-party appellants are Peter J. DeGeorge, Roger F. Ross, and Donald E. Sims (DeGeorge); the real party in interest is International Business Machines Corporation (IBM). The junior-party appellee is Donald R. Bernier (Bernier); the real party in interest is Itel Corporation (Itel).

The DeGeorge Application, Serial No. 228,733 ('733), was filed February 23, 1972. It claims the benefit of DeGeorge application Serial No. 871,424 ('424), filed October 22, 1969, and DeGeorge application Serial No. 609,670 ('670), filed January 16, 1967. The specifications of all three applications can be considered identical for purposes of this appeal.

* The Honorable Jack R. Miller assumed senior status effective June 6, 1985.

The interference was declared after DeGeorge copied, as counts 1 through 13, claims 28 through 40 of U.S. patent No. 3,579,193 ('193) to Bernier, issued May 18, 1971 on an application filed May 20, 1968. The counts concern electrical circuitry in word processors (or typewriters) designed to obtain automatic indentation of a block or paragraph of text so that subsequent lines of the block (or paragraph) are indented from the left line regardless of the recorded codes for the subsequent lines. The invention, to be used with a word processor (or typewriter), was referred to by the board as a two-counter comparison paragraph indent (TCCPI) circuit.

Of the 13 counts, 2 through 13 are dependent and do not raise any issue distinct from those raised by independent count 1. All parties agree that the priority determination as to count 1 will govern the award of priority as to all counts. Count 1 reads as follows:

> Apparatus for controlling the operation of a data processing system printer having printing mechanism for printing characters and functional mechanism for selecting the location of printing of characters, first means for sensing a first characteristic operation of the printer, second means enabled in response to the sensing of said first characteristic operation for counting a first succession of second characteristic functional operations including first storage means for storing the count of said second characteristic functional operation, comparison circuit means for counting a second succession of said second characteristic functional operations, and means limiting said second succession of second characteristic functional operations when the count of said second succession bears a preselected relationship to the count of said first succession of second characteristic functional operations.

To be successful in the interference, DeGeorge needs the benefit of the '670 filing date. Consequently, a critical issue is the sufficiency of the '670 disclosure with respect to enablement under 35 U.S.C. § 112, paragraph 1.[1] Bernier contends that allegedly essential material contained in four United States patents, a United States patent application, and five IBM customer engineering manuals was improperly incorporated by reference in the '670 application, and that the disclosure without those references, *i.e.*, the *per se* disclosure, was not enabling.

The board held, *inter alia*, that the burden of persuasion is on the copier DeGeorge, that the count language defines a combination of word processor and TCCPI circuit (as opposed to only a TCCPI circuit), that the '670 application was not enabling, and, hence, that DeGeorge was not entitled to the '670 filing date. The board also held that the DeGeorge applications did not include a "best mode contemplated by the inventor", also required by 35 U.S.C. § 112, paragraph 1, and, *sua sponte*, that DeGeorge had not proven conception by all of the named three-person entity—DeGeorge, Ross, and Sims. Consequently, priority of invention was awarded to Bernier.

### Issues

1. Whether the board imposed on DeGeorge the proper burden of persuasion.

2. Whether the board erred in its interpretation of count 1.

3. Whether the board erred in concluding that the DeGeorge '670 disclosure is not enabling.

4. Whether the board clearly erred in finding that the DeGeorge applications do not disclose the best mode.

---

1. To obtain the benefit of a parent filing date under 35 U.S.C. § 120, the invention must be disclosed in the parent application "in the manner provided by the first paragraph of § 112." The first paragraph of 35 U.S.C. § 112 states: "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most clearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

5. Whether the board incorrectly ruled, *sua sponte*, that there was no conception by the three person entity of DeGeorge, Ross, and Simms.

## OPINION

### *Improper Burden of Persuasion*

■ Having copied the claims from Bernier's '193 patent, DeGeorge must show by clear and convincing evidence that the disclosure on which he relies supports the copied claims that became the interference counts. *Burson v. Carmichael*, 731 F.2d 849, 852, 221 USPQ 664, 666 (Fed.Cir.1984); *Snitzer v. Etzel*, 531 F.2d 1062, 1063, 189 USPQ 415, 417 (CCPA 1976). As the party copying the claims, DeGeorge had the burden of persuasion on the right to make the counts which had to be met before an interference could properly be declared. That burden should be met by clear and convincing evidence. *Woods v. Tsuchiya*, 754 F.2d 1571, 1575, 225 USPQ 11, 13 (Fed.Cir.1985).

■ DeGeorge argues that the board, instead of using the "clear and convincing" standard, used the "beyond a reasonable doubt" standard or at least equated that with the "clear and convincing" standard to the point that it affected the board's outcome. Bernier contends that the board's discussion of "beyond a reasonable doubt" was made only in passing and not to describe the standard actually applied in the case.

We agree with DeGeorge. The board stated that DeGeorge "at least must show 'by clear convincing evidence' that the involved application supports its claims corresponding to the counts." That burden, stated the board, "has been said to be a heavy one," and:

> [I]t has been said further that there must be 'no doubt' that a copier's application discloses every material limitation and that 'all doubts must be resolved against the copier.' (Citation omitted.) Since all, presumably reasonable, doubts must be resolved against the copier, it would appear that the copier's burden also is perhaps beyond doubt. Also see *Marathon-*

*Oil Co. v. Firestone* ... wherein ... it was stated ... [t]hese varying formulations of the burden of proof ["clear and convincing" and "beyond a reasonable doubt"] do not ... compel different levels of proof.

From that, and other portions of the opinion, it is clear that the board raised the burden of persuasion to an improper level.

The "clear and convincing" standard is different from "beyond a reasonable doubt." *See, e.g., In re Caveney*, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985); *Trans-World Manufacturing Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1559–60, 224 USPQ 259, 262 (Fed.Cir.1984); *SSIH Equipment S.A. v. USITC*, 718 F.2d 365, 380, 218 USPQ 678, 691 (Fed.Cir.1983) ("Additional views of Circuit Judge Nies"); *accord, Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979); *Woodby v. INS*, 385 U.S. 276, 284, 87 S.Ct. 483, 487, 17 L.Ed.2d 362 (1966). Because the board applied an erroneous—and more difficult—standard of proof, the decision must at least be vacated. For the reasons indicated below, however, the board's decision is reversed in part and vacated in part.

### *Improper Count Construction*

There are two asserted count interpretations. The board narrowly interpreted the count as requiring a word processor in addition to the TCCPI. DeGeorge urges a broader interpretation, which would require only the TCCPI. Under the narrower interpretation, the board found DeGeorge's grandparent '670 disclosure not enabling because of insufficient disclosure of a word processor embodiment.

■ A critical issue, therefore, is construction of the count, a question of law. *Cf. Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir.1983), *cert. denied*, — U.S. —, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984) (claim construction is a question of law). Interference counts are given the broadest reasonable interpretation possible, and resort to the specification is necessary only when there are ambigui-

ties inherent in the claim language or obvious from arguments of counsel. *See, e.g., Woods v. Tsuchiya* 754 F.2d 1571, 1578, 225 USPQ 11, 15 (Fed.Cir.1985); *In re Baxter,* 656 F.2d 679, 686, 210 USPQ 795, 802 (CCPA 1981); *Kroekel v. Shah,* 558 F.2d 29, 32, 194 USPQ 544, 546 (CCPA 1977); *Stansbury v. Bond,* 482 F.2d 968, 974–75, 179 USPQ 88, 92 (CCPA 1973). If there is such ambiguity, resort must be had to the specification of the patent from which the copied claim came. *See, e.g., Burson v. Carmichael,* 731 F.2d 849, 852, 221 USPQ 664, 666 (Fed.Cir.1984); *Stockman v. Switzer,* 379 F.2d 996, 54 CCPA 1563, 1568, 1000, 154 USPQ 105, 106–07 (1967).[2]

█ Here, the count is arguably ambiguous with respect to whether it includes a word processor (or typewriter) in addition to the TCCPI. The problem arises in large part from the use of "having" (in the second line of the quoted material below), and from a failure to include "comprising" before "first means" (fifth line below):

> Apparatus for controlling the operation of a data processing system printer *having* printing mechanism for printing characters and function mechanism for selecting the location of printing of characters, first means ..., second means ..., comparison circuit means ..., and means limiting .... (Emphasis added.)

"Comprising" is often used after a claim preamble to introduce elements of the invention. If "having" is viewed as a substitute for "comprising", the "printing mechanism ... of characters," *i.e.,* word processor, might be viewed as an element of the claimed invention, not as part of the preamble. If, however, "having" is viewed as a participle combined with "printing mechanism ... of characters", it would be an adjective phrase in the claim preamble modifying "data processing system printer", and the word processor would not be part of the claimed invention.[3]

Resort to the '193 patent specification resolves the ambiguity, compelling the broader reading of the copied claim, *i.e.,* without the word processor. The patent does not show or describe in reasonable detail any kind of printer, or data recording or playback mechanism with which the TCCPI feature may be used. The various electrical signals used as input signals to the TCCPI circuitry disclosed in the patent are received from a word processor with which the circuit is used. The circuitry for generating these signals resides in the word processor and is not described in the Bernier '193 patent except for a brief reference to it as being in a copending patent application.

We have often held that examining other claims in the patent may be used to determine the scope of the claim at issue, *see, e.g., McGill, Inc. v. John Zink Co.,* 736 F.2d 666, 674, 221 USPQ 944, 950 (Fed. Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984); *Lemelson v.*

---

**2.** Claims during prosecution, reissue and reexamination are also given the broadest reasonable interpretation possible, consistent with the specification. *See, e.g., In re Yamamoto,* 740 F.2d 1569, 222 USPQ 934 (Fed.Cir.1984). That approach does not apply, however, during litigation of issued claims, where the specification and file history should be resorted to in ascertaining the claims' true meaning, *Lemelson v. United States,* 752 F.2d 1538, 1549, 224 USPQ 526, 532 (Fed.Cir.1985); *Caterpillar Tractor Co. v. Berco, S.P.A.,* 714 F.2d 1110, 1114, 219 USPQ 185, 187 (Fed.Cir.1983); *Autogiro Co. of America v. United States,* 384 F.2d 391, 395, 155 USPQ 697, 702 (Ct.Cl.1967), and claims are interpreted with an eye towards upholding their validity, *Carman Industries, Inc. v. Wahl,* 724 F.2d 932, 942–43, 220 USPQ 481, 489 (Fed.Cir.1983); *ASC Hospital Systems, Inc. v. Montefiore Hospital,*

732 F.2d 1572, 1577, 221 USPQ 929, 932 (Fed. Cir.1984).

**3.** Generally, and in this case, the preamble does not limit the claims. This case is unlike *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 896, 221 USPQ 669, 675–76 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984), where preamble limitations were "necessary to give meaning to the claim and properly define the invention." *See generally Kropa v. Robie,* 187 F.2d 150, 152, 38 CCPA 858, 861, 88 USPQ 478, 480 (1951); 2 Chisum, Patents § 8.06[1][d] (1985). *See also Arshal v. United States,* 621 F.2d 421, 430–31, 208 USPQ 397, 406–07 (Ct.Cl.1980) (where effect of the preamble words are "at best ambiguous ... a compelling reason must exist before the language can be given weight").

*United States,* 752 F.2d at 1549, 224 USPQ at 532, and our interpretation of the copied claim is harmonious with the other claims of the Bernier patent. In other Bernier independent claims (1, 21, and 41), just as in count 1, neither "comprising" nor "having" precedes the actual elements of the claimed invention. Though inclusion of such terms would have clarified all the claims, their absence does not render unreasonable our interpretation.

Even without resorting to the '193 patent, the broadest interpretation of the count is DeGeorge's, not the board's. As stated above, the broadest interpretation is always applicable so long as it is reasonable, and we conclude that interpreting the count as including only the TCCPI is not only a reasonable interpretation, it is the *most* reasonable interpretation.

Modifiers of a term are usually in proximity to such term. The phrase "printing mechanism ... of characters," is nearest the preamble term "printer" and thus likely would be understood to modify such term. Moreover, it is more reasonable to set off the preamble, *e.g.* with a comma as under our interpretation, than to have it run into the body of the claim without being set off, as true under the board's interpretation. Furthermore, the elements we perceive as part of the claimed invention are all labeled as "means" with a narrower functional description, whereas the phrase "printing mechanism ... of characters" uses "mechanism for" instead of "means", thus enhancing that phrase's status as not being part of the claimed elements. In sum, the more reasonable claim interpretation is one having "printing mechanism ... of characters" as part of the preamble modifying the term "data processing system printer" and not a limitation in the copied claim.

*Enablement*

Under the proper broad construction of the count, the DeGeorge *per se* disclosure adequately describes the TCCPI circuit for purposes of enablement under 35 U.S.C. § 112. That construction compels us, therefore, to reverse the board's holding that the '670 *per se* disclosure is not enabling.

■ A patent must contain a description that enables one skilled in the art to make and use the claimed invention. *Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.,* 750 F.2d 1569, 1576, 224 USPQ 409, 413 (Fed.Cir.1984). "An inventor need not, however, explain every detail since he is speaking to those skilled in the art." *In re Howarth,* 654 F.2d 103, 105, 210 USPQ 689, 691 (CCPA 1981). "Not every last detail is to be described, else patent specifications would turn into production specifications, which they were never intended to be." *In re Gay,* 309 F.2d 769, 774, 50 CCPA 725, 733, 135 USPQ 311, 316 (CCPA 1962). "That some experimentation is necessary does not preclude enablement; the amount of experimentation, however, must not be unduly extensive." *Atlas Powder,* 750 F.2d at 1576, 224 USPQ at 413. *See also W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1557, 220 USPQ 303, 316 (Fed.Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *In re Angstadt,* 537 F.2d 498, 503, 190 USPQ 214, 218 (CCPA 1976).

The board's enablement analysis was hampered by its erroneous interpretation of count 1 to include a word processor (as well as by its requirement that DeGeorge prove its case beyond a reasonable doubt.) Though we could remand for the board to re-determine enablement in light of the proper count construction (and burden of proof), we choose to resolve the legal question of enablement, *Atlas Powder,* 750 F.2d at 1576, 224 USPQ at 413, and avoid unnecessary delay in determining priority between the parties.

■ Bernier has not seriously contested that the '670 disclosure encompasses all the components of the TCCPI. Indeed, the board held that the DeGeorge *per se* '670 disclosure showed all the elements of the TCCPI circuit. Bernier contends, however, that the *per se* '670 disclosure is not enabling because the control circuits for the connections and coils in the TCCPI circuit

include contacts operated by coils in the word processor and the control circuits include connections with signals from the word processor that are not identified.

However, DeGeorge does disclose the portion of the preexisting device, *e.g.*, word processor, to be altered to accommodate the TCCPI circuit. DeGeorge need not disclose all circuit details of a word processor or the like. DeGeorge's expert witness Tanner, a graduate electrical engineer with years of design experience on word processors, testified that "any logic designer of a normal ability should be able to implement functions given this much description [in the *per se* '670 disclosure] about them." The *per se* disclosure specifically describes the TCCPI circuit input signals and their functions as found in an ordinary word processor. The TCCPI circuit relays are identified as to their functions and as to the functions and identity of the word processor signals required by them. No control circuits need be designed since these signal generating circuits exist in the word processor.

It is undisputed that counters, comparison circuits, and logic circuits for detecting input signals from a word processor were all familiar to those with skill in logic design, and particularly printer control logic design, in 1967. At that time, there was nothing exotic or unique about the logic elements of the TCCPI circuit and how they interfaced with signal generating control circuits in a word processor. Thus, there was no need to build a word processor from the ground up merely to implement the count.

DeGeorge not only disclosed the TCCPI circuit in block diagram format in the '670 application but also disclosed it in detailed schematic format within the same disclosure, together with an extensive verbal description. Because DeGeorge made this extra effort of added specific description, the board, in effect, penalized DeGeorge by stating: "[h]aving chosen this narrow, species approach, we believe DeGeorge had an obligation also to reveal the specific wiring diagrams with which the TCCPI wiring diagrams were to interface sufficiently to complete all the control circuits [*i.e.*, a whole word processor] in order to satisfy the statutory mandate...." We disagree with the board in that regard.

We conclude that the enablement requirement of § 112 was satisfied by disclosure of detailed, *claimed* TCCPI circuitry without requiring detailed disclosure of all related, *unclaimed* circuitry with which the TCCPI might be interfaced.

*Best Mode*

■ "The specification ... shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112. Best mode is a question of fact. *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 676, 221 USPQ 944, 951 (Fed. Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). Hence, our review of the board's best mode determination is under a clearly erroneous standard. *See, e.g., Coleman v. Dines*, 754 F.2d 353, 356, 224 USPQ 857, 859 (Fed.Cir.1985).

■ Not complying with the best mode requirement amounts to concealing the preferred mode contemplated by the applicant at the time of filing. *In re Gay*, 309 F.2d 769, 772–73, 50 CCPA 725, 730–32, 135 USPQ 311, 315 (1962). "[T]here is no objective standard by which to judge the adequacy of a best mode disclosure." *In re Sherwood*, 613 F.2d 809, 816, 204 USPQ 537, 544 (CCPA 1980). Instead, "only evidence of concealment (accidental or intentional) is to be considered. That evidence, in order to result in affirmance of a best mode rejection, must tend to show that the quality of an applicant's best mode disclosure is so poor as to effectively result in concealment." *Id.* The purpose of the best mode requirement "is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived." *In re Gay*, 309 F.2d at 772, 50 CCPA at 730, 135 USPQ at 315. Compliance with the best

mode requirement exists when an inventor discloses his preferred embodiment. *Id.*[4]

■ The board found no best mode in the DeGeorge applications. The board's analysis, however, was influenced by its erroneous count construction. The board believed that "in order to comply with the best mode disclosure requirement of 35 U.S.C. § 112, it was DeGeorge's responsibility to identify at filing the specific engineering level of MT/ST [word processor] with which it was contemplated that the disclosed species should be employed rather them [sic] some other level." Because the properly construed count does not include a word processor, failure to meet the best mode requirement here should not arise from an absence of information on the word processor. Hence, the board's finding of no best mode was clearly erroneous.

*Conception by the Three Named DeGeorge Inventors*

The board raised the issue of conception for the first time in its opinion. It held that DeGeorge did not prove that the three co-inventors, DeGeorge, Ross, and Sims, had "possession of conception."

Bernier regards the issue as moot on appeal because DeGeorge admits that it relies solely on its constructive reduction to practice (*i.e.,* original filing date), not conception plus diligence until reduction to practice, for purposes of this appeal. As the board noted, Bernier raises no issue of the appropriateness of naming all three inventors in the DeGeorge applications. Indeed, Bernier concedes that DeGeorge is entitled to priority if its original '670 application satisfies 35 U.S.C. § 112.

DeGeorge contends the issue is not moot because the board's erroneous, *sua sponte* ruling may cloud *ex parte* prosecution of the DeGeorge '733 application and any patent issuing on that DeGeorge application.

■ In light of our determination that the '670 application is enabling, and Bernier's concession of priority if DeGeorge is indeed entitled to the date of that application, DeGeorge is entitled to priority. We will not review the board's determination on conception. Though proper inventorship may be the subject of future prosecution, it is not ancillary to priority. *Coleman v. Dines,* 754 F.2d 353, 361, 224 USPQ 857, 863 (Fed.Cir.1985); *Morgan v. Hirsch,* 728 F.2d 1449, 1452–53, 221 USPQ 193, 195 (Fed.Cir.1984); *Case v. CPC International, Inc.,* 730 F.2d 745, 749, 221 USPQ 196, 200 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984).

*Conclusion*

The decision of the board is *reversed* on the enablement and best mode issues; it is *vacated* on the conception issue. Priority on all counts is awarded to DeGeorge.

REVERSED IN PART; VACATED IN PART.

---

4. Here, the best mode determination is ancillary to priority in two contexts: with respect to the involved '733 application, *Tofe v. Winchell,* 645 F.2d 58, 209 USPQ 379 (CCPA 1981); and with respect to satisfaction of § 112 by the parent application for purposes of entitlement to a parent date under 35 U.S.C. § 120, *Weil v. Fritz,* 572 F.2d 856, 862–63, 196 USPQ 600, 603 (CCPA 1978). In *Magdo v. Kooi,* 699 F.2d 1325, 216 USPQ 1033 (Fed.Cir.1983), however, this Court left open the question of whether a best mode challenge to a patent in interference is ancillary.