989 F.2d 1203
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
The HEIL COMPANY, Plaintiff-Appellant,
v.
SNYDER INDUSTRIES, INC., Defendant-Appellee.
 No. 92-1126.
 United States Court of Appeals, Federal Circuit.
 Feb. 17, 1993.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined April 26, 1993.
 
 Before MICHEL and LOURIE, Circuit Judges, and COWEN, Senior Circuit Judge.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 The Heil Company (Heil) appeals from the December 6, 1991 judgment of the United States District Court for the District of Nebraska in Docket No. CV88-L-671, granting priority to Snyder Industries, Inc. (Snyder). We affirm-in-part and reverse-in-part.
 
 DISCUSSION
 
 2
 Under 35 U.S.C. § 146 (1988), "[a]ny party to an interference dissatisfied with the decision of the Board ... on the interference may have remedy by civil action ... unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided." Thus, a dissatisfied party initially has the choice of either (a) appealing the Board's decision to this court, or (b) filing an interference suit in a federal district court. A party choosing option (b) may appeal the decision of the district court to this court. 28 U.S.C. § 1295(a)(4)(C) (1988). Thus, in an appeal such as the instant one, we review the decision of the district court, not that of the Board,[1] and we limit our review here accordingly.
 
 
 3
 Heil, the junior party applicant, first argues on appeal that the district court's interpretation of the interference count (Count) as requiring utility as a refuse container was erroneous. We agree. The Count defines the invention only as "a portable molded container " (emphasis added). "[L]imitations not clearly included in a count should not be read into it." Newkirk v. Lulejian, 825 F.2d 1581, 1583, 3 USPQ2d 1793, 1795 (Fed.Cir.1987). Here, the Count was limited merely to a "container," without any reference to use as a refuse container. The court thus erred in reading such a limitation into the Count.
 
 
 4
 Snyder, the senior party patentee, asserts that when a count does not state for what purpose an invention will be used, "the courts look to the record" to determine the intended use. However, the courts look beyond the count only "when there are ambiguities inherent in the claim language or obvious from arguments of counsel." DeGeorge v. Bernier, 768 F.2d 1318, 1322, 226 USPQ 758, 761 (Fed.Cir.1985). Furthermore, when such ambiguities exist, the courts must look "to the specification of the patent from which the copied claim came," id.; see also In re Spina, 975 F.2d 854, 856, 24 USPQ2d 1142, 1144 (Fed.Cir.1992) (quoting DeGeorge )--here, Snyder's specification.
 
 
 5
 Interpretation of a count is a question of law, which we review de novo. DeGeorge, 768 F.2d at 1321, 226 USPQ at 760. We do not believe the unqualified term "container" is ambiguous. However, even assuming that it is, Snyder's specification describes the invention as "relat[ing] generally to containers and, in particular, to a molded, wheeled container with a hinged lid. Such containers, particularly in larger sizes on the order of 90 gallons, are particularly well suited for handling refuse." Joint Appendix at 2680. Thus, Snyder's patent, and therefore the Count, do not limit the invention to use as only a refuse container.
 
 
 6
 Consequently, we conclude that Heil's second argument--that the district court erred in requiring testing of the invention as a refuse container under conditions of actual use in order to establish a reduction to practice--also has merit. Reduction to practice is a question of law, D.L. Auld Co. v. Chroma Graphics, 714 F.2d 1144, 1151, 219 USPQ 13, 18 (Fed.Cir.1983), and therefore is reviewed de novo. In order for there to be a reduction to practice, "the invention must have been 'sufficiently tested to demonstrate that it will work for its intended purpose.' " King Instrument Corp. v. Otari Corp., 767 F.2d 853, 861, 226 USPQ 402, 407 (Fed.Cir.1985) (quoting General Electric Co. v. United States, 654 F.2d 55, 60 n. 8, 228 Ct.Cl. 192, 201 n. 8, 211 USPQ 867, 872 n. 8 (1981)), cert. denied, 475 U.S. 1016 (1986). The invention in this case was intended for use as a portable, lidded container with a hinge-handle construction and not only as a refuse container. Thus, the district court erred in requiring Heil to have tested the invention under "actual use" conditions as a refuse container.
 
 
 7
 Furthermore, an invention need not be tested "in a commercially satisfactory stage of development" in order to prove a reduction to practice. Id. (quoting Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 838, 221 USPQ 561, 567 (Fed.Cir.1984)). Consequently, the test of the May, 1981 mock up container (mock up), during which the mock up "was maneuvered around by grasping its hinge rod-handle, and its lid was apparently opened and closed," Heil Co. v. Snyder Indus., Inc., No. CV88-L-671, slip op. at 8 (D.Neb. Dec. 6, 1991) (quoting Board's decision at 5-6), was sufficient.
 
 
 8
 Thus, we conclude that the mock up had proven utility as a portable, lidded container and that the testing was adequate to demonstrate that the hinge-handle "worked for its intended purpose." Newkirk, 825 F.2d at 1582, 3 USPQ2d at 1794. Molding of the body of such containers was old in the art. Accordingly, we hold that the mock up was a reduction to practice of the invention that corresponded to the Count in all essential respects, even though the mock up did not represent a commercially marketable refuse container.
 
 
 9
 Heil further contends on appeal that the district court erred in determining "that Heil's mock up put Heil in sufficient possession of the commercially preferred rotationally molded embodiment Heil offered for sale [in its September 9, 1981 bid to the County of Sacramento (Sacramento bid) ] to raise an 'on sale' bar." Whether an on sale bar arises is a question of law based on underlying questions of fact. Intel Corp. v. U.S. Int'l Trade Comm'n, 946 F.2d 821, 829, 20 USPQ2d 1161, 1169 (Fed.Cir.1991). In UMC Electronics Co. v. United States, 816 F.2d 647, 656, 2 USPQ2d 1465, 1472 (Fed.Cir.1987), cert. denied, 484 U.S. 1025 (1988), this court set forth the factors to be considered and the respective burdens of proof involved in determining whether a particular activity constitutes an on sale bar:
 
 
 10
 [T]he challenger has the burden of proving that there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art. If these facts are established, the patent owner is called upon to come forward with an explanation of the circumstances surrounding what would otherwise appear to be commercialization outside the grace period.
 
 
 11
 The UMC court recognized two exemplary circumstances that would preclude an on sale bar: (1) if the inventor had not progressed "far beyond" a mere conception; or (2) if the sale was only part of experimental testing of the invention. Id.
 
 
 12
 The district court stated that it was undisputed that, with the Sacramento bid at a competitive price, Heil made an offer to sell 28,000 refuse containers to the City of Sacramento. The district court further found that the mock up, although not a reduction to practice, represented the subject invention beyond "mere conception," embodying "the hinge-handle construction, the one element of the invention that was not yet part of the prior art." Heil, slip op. at 14. Because we hold that the mock up was an actual reduction to practice and, therefore met an even more rigorous test than "fully anticipat[ing] the claimed invention or ... render[ing] the claimed invention obvious by its addition to the prior art," UMC, 816 F.2d at 657, 2 USPQ2d at 1472, we conclude that the district court's findings were not clearly erroneous, and accordingly that the challenger--Snyder--fulfilled its burden. Moreover, the district court erred in requiring the feature of rotational molding of the hinge-handle, even though it was a limitation in a dependent claim in Snyder's patent.
 
 
 13
 In addition, the finding that Heil was not merely offering a concept of the invention for sale inheres in the district court's finding that the mock up was more than a "mere concept," and our holding that there was a reduction to practice of the invention described in the Count confirms that finding. Furthermore, the district court found that Heil "intended to perform the contract" with Sacramento if it won the bid, and that it backed up that intent with a $300,000 bid bond. Heil, slip op. at 14. Because of this "level of commitment to th[e] bid," in combination with the other factors, the district court concluded that the Sacramento bid constituted an on sale bar under 35 U.S.C. § 102(b) (1988). Because Heil's intent to fulfill the contract if awarded (and thereby earn a profit) and the size of the bid bond could together certainly show that Heil had a commercial motive in making this offer to sell, we conclude that these district court findings, which establish that Heil did not rebut the presumption of an on sale bar created by the above findings, are also not clearly erroneous.[2]
 
 CONCLUSION
 
 14
 We hold that Heil's May, 1981 mock up constituted a reduction to practice of its invention, thereby rendering Snyder's patent invalid under 35 U.S.C. § 102(g) (1988). We hold further that the invention is unpatentable to Heil, as it was on sale more than one year prior to the date of Heil's patent application. 35 U.S.C. § 102(b). Accordingly, the district court's judgment is affirmed-in-part and reversed-in-part.
 
 COSTS
 
 15
 Each party shall bear its own costs.
 
 
 
 [1]
 Indeed, "[i]n such suits the record in the Patent and Trademark Office shall be admitted [in the district court] on motion of either party ... [and such evidence] when admitted shall have the same effect as if originally taken and produced in the suit." 35 U.S.C. § 146
 
 
 [2]
 Because we hold that Heil was precluded from obtaining a patent for its invention because of an on sale bar and that Heil's mock up was a reduction to practice of the invention of the Count, we need not address the issues raised by the parties in this appeal that pertain to Heil's prototype containers and the district court's findings and conclusions with respect thereto