DYK, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s decision that the preamble is not a claim limitation.
I
Under our precedent, a preamble is construed as limiting “if it recites essential structure or steps, or if it is ‘necessary to give life, meaning, and vitality’ to the claim,” but not if “the claim body describes a structurally complete invention.” [1] Over the years our court has struggled to make sense of when a preamble should be construed as limiting. See Bell Commc’ns Research, Inc. v. Vitalink Commc’ns Corp., 55 F.3d 615, 620 (Fed.Cir.1995) (“Much ink has, of course, been consumed in debates regarding when and to what extent claim preambles limit the scope of the claims in which they appear.”).
As the majority itself appears to recognize, we have not succeeded in articulating a clear and simple rule. Majority Op. at 1358; see also Patrick J. Flinn, Claim Construction Trends in the Federal Circuit, 572 PLI/PAT 317, 335-36 (1999) (characterizing the preamble limitations test as “opaque” and without a set framework). As a result of the lack of clarity as to whether a preamble should be construed as limiting, our case law has become rife with inconsistency, both in result and in the articulation of the test.[2] As the leading treatise on patent law observes, *1364 “the decisions are difficult to reconcile.” 3 Donald S. Chisum, Chisum on Patents § 8.06[l][d] (2010).
It seems to me that a rule recognizing that all preambles are limiting would make better sense and would better serve the interests of all concerned. There is, after all, little to be said in favor of allowing an applicant, in the claim drafting process, to include material in the claims that is not binding. If patentees are allowed to include material in the claim definitions that is not binding, patentees can suggest or imply one position before the U.S. Patent & Trademark Office (“PTO”) to secure allowance of the patent on the theory that the preamble is limiting and another, inconsistent position in infringement litigation on the theory that it is not limiting.[3] Principles of fairness thus dictate that the patentee should be required to clearly define the claimed invention’s scope. By creating a uniform rule that all preambles are limiting, we would ensure the patentee has the burden of drafting a patent that avoids confusion as to the scope of the claims. As the Supreme Court concluded in Merrill v. Yeomans, 94 U.S. 568, 573-74, 24 L.Ed. 235 (1876), “nothing can be more just and fair, both to the patentee and to the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent.”
Neither the Supreme Court nor our court sitting en banc has ever addressed the preamble limitation issue. I think the time may have come for us to eliminate this vague and confusing rule.
II
Even under our existing precedent, which is binding on the panel, I believe that the preamble term “photoselective vaporization” should have been construed as a claim limitation. The determination of whether a preamble serves as a claim limitation is “resolved only on review of the entire[ ] ... patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim.” Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1257 (Fed.Cir.1989); see also Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc., 98 F.3d 1563, 1572-73 (Fed.Cir.1996) (“Whether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is determined on the facts of each ease in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history.”). A preamble generally limits an invention if it recites essential structure or steps or if it is “necessary to give life, meaning, and vitality” to a claim. Catalina Mktg., 289 F.3d at 808 (quoting Pitney Bowes, 182 F.3d at 1305).
In my view, the photoselective vaporization language must be treated as a claim limitation. U.S. Patent No. 6,986,764 (“the '764 patent”) was a continuation-in-part of U.S. Patent No. 6,554,824 (“the '824 patent”). Neither the '824 application nor the issued '824 patent used the term “photoselective vaporization” in the claims or in the specification. The addition of the term “photoselective vaporization” in the preamble of the claims of the '764 patent was significant. The applicant took considerable care to add new matter to the specification describing and defining photoselec *1365 tive vaporization. The term appears in the title of the patent (once), the abstract (once), the Field of the Invention section (twice), the Summary of the Invention section (twice), and the Detailed Description section (once). For example, the Field of the Invention section states: “The present invention relates generally to laser treatment of soft tissue, and more particularly to photoselective vaporization of the prostate PVP, and to photoselective vaporization of other tissue.” '764 Patent, col. 1 11.33-36 (emphases added).
The Summary of the Invention section of the specification defines “photoselective vaporization” as follows:
Photoselective vaporization of tissue, such as the prostate for treatment of BPH, is based upon applying a high intensity radiation to prostate tissue using a radiation that is highly absorptive in the tissue, while being absorbed only to a negligible degree by water or other irrigant during the operation, at power densities such that the majority of the energy is converted to vaporization of the tissue without significant residual coagulation of adjacent tissue.
Id. col.3 1.66-col.4 1.6. In light of this passage, the District Court properly construed “[a] method for photoselective vaporization of tissue”/“[a]n apparatus for photoselective vaporization of tissue” to mean “using a wavelength that is highly absorptive in the tissue, while being absorbed only to a negligible degree by water or other irrigant.” Am. Med. Sys., Inc. v. Biolitec, Inc., 569 F.Supp.2d 313, 327 (D.Mass.2008). Photoselective vaporization is a product of shortening the wavelengths of the emitted signal.
The majority appears to conclude that reading photoselective vaporization as a clear limitation would be inconsistent with the specification, which contemplates wavelengths up to 1000 nm. In my view, the majority misconstrues the specification and prosecution history.
As the majority points out, the original '824 patent was concerned, among other things, with reducing the wavelength of the laser light over the prior art. As the majority recognizes, the specification repeatedly criticizes the prior art use of “earlier laser systems that used longer wavelengths of 2100 nm or 1064 nm.” Majority Op. at 1357. The '824 patent reduced the claimed wavelengths to the 200 to 1000 nm range, and the specification stated that the “wavelength of the laser light is preferably between 200 and 1000 nm.” '764 Patent col.4 11.28-29; see '824 Patent col.3 11.44 — 45.
The continuation-in-part application that became the '764 patent further reduced the claimed ranges. The claims of the '824 patent were amended to eliminate wavelengths in the 650-1000 range and to substitute references to wavelengths in the 200-650 range for the original wavelength range of 200-1000 nm in the claims where a specific range is included. See J.A. SOB-OOS. While the specification continued to mention wavelengths in the 200-1000 range as “preferred” for some embodiments, the specification makes clear that the photoselective vaporization embodiment is a separate embodiment, stating that “one embodiment of the invention provides a method for photoselective vaporization of prostate tissue.” '764 patent col.5 11.21-22. The specification states that for that invention “it is desirable to provide a wavelength between 650 and 200 nm.” Id. col. 16 11.32-33. The photoselective vaporization embodiment is never described as having a wavelength in the 200-1000 range. Rather, it is consistently described as having wavelengths in the 200-650 range.[4] The specification repeatedly touts *1366 the advantages of photoselective vaporization, that is, the “532 nm light from these lasers is selectively absorbed by blood leading to good hemostasis” and more efficient tissue ablation. '764 Patent col.2 11.49-59.
If there were any doubt that photoselective vaporization is a claim limitation, it is resolved by the specification’s statement that “[t]he wavelength used according to the present invention for BPH treatment should be strongly absorbed in the prostate tissue to help initiate and maintain tissue vaporization.... The wavelength also must be minimally absorbed by the irrigant ... used during the procedure, typically water.” '764 Patent eol.12 11.16-21 (emphases added). While this sentence appears in the Detailed Description section of the specification, we have repeatedly held that “the use of the words ‘the present invention’ can be read to limit the invention to what is described as such.” Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1383 (Fed.Cir.2009) (citing Honeywell Int’l, Inc. v. ITT Indus., Inc., 452 F.3d 1312, 1318 (Fed.Cir.2006)); see Trading Techs. Int’l, Inc. v. eSpeed, Inc., 595 F.3d 1340 (Fed.Cir.2010) (holding that the reference to the system of the present invention strongly suggests that the claimed re-centering command requires a manual input); Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1379 (Fed.Cir.2005) (noting that “when the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment”); Honeywell, 452 F.3d at 1318 (construing claim term to include fuel filter because “[o]n at least four occasions, the written description refers to the fuel filter as ‘this invention’ or ‘the present invention’ ”). Minimal absorption by the irrigant and strong absorption by tissue, or photoselective vaporization, are thus mandatory aspects of this particular invention.
I recognize, as the majority points out, that the specification for the '764 patent includes references to wavelengths that are not photoselective because they are not “minimally absorbed.” '764 Patent col.8 11.7-12 (“Other laser systems may be used ... which are adapted to provide the output power and wavelengths described herein, including wavelengths in the ranges from 200 nm to 1000 nm and from 1100 nm to 1800 nm, for example.”). But as I have noted this language in the specification does not relate to the photoselective vaporization embodiment and is explained by the fact that the '824 patent specification included claims that were directed to longer wavelengths. The fact that such language was retained by the *1367 '764 patent specification is explained by a desire to include additional claims in the '764 patent not directed to the “photoselective vaporization” embodiment. Indeed, a preliminary amendment to the '764 application recited seven additional claims (claims 77-80) that did not include the term “photoselective vaporization.” Claim 77 explicitly described using lasers with a wavelength in the 200 nm to 1000 nm range. These claims were subsequently abandoned during prosecution after being rejected as anticipated by U.S. Patent Nos. 5,776,175 and 5,776,127. J.A. 369.
Under the circumstances, it seems clear to me that “photoselective vaporization” should be construed as a claim limitation; by adding this terminology during prosecution of the '764 patent, the patentee conceded that the term gave life, meaning, and vitality to the claims.[5]
Therefore, contrary to the majority, I would hold that photoselective vaporization is a claim limitation.

. Catalina Mktg. Int’l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808, 808-09 (Fed.Cir.2002) (quoting Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed.Cir.1999)).

. See Bicon, Inc. v. Straumann Co., 441 F.3d 945, 952 (Fed.Cir.2006) ("While it is true that preamble language is often treated as nonlimiting in nature, it is not unusual for this court to treat preamble language as limiting, as it is in this case.”); Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 831 (Fed.Cir.2003) ("Whether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent.”); Catalina Mktg., 289 F.3d at 808 (Fed.Cir.2002) ("No litmus test defines when a preamble limits claim scope.”). Compare DeGeorge v. Bernier, 768 F.2d 1318, 1322 n. 3 (Fed.Cir.1985) (stating that "[g]enerally, and in this case, the preamble does not limit the claims”), with Bell Commc'ns, 55 F.3d at 621 (noting that the observation in DeGeorge that the preamble does not generally limit the claims "can only have been descriptive, rather than prescriptive .... [0]ne cannot determine a preamble's *1364 effect except by reference to the specific claim of which it is a component”).

. Of course, if the patentee makes his or her positions explicit, the patentee could be barred by the doctrine of prosecution history estoppel from taking such inconsistent positions. But, in many cases, it is not readily apparent whether the patentee has taken inconsistent positions.

. See, e.g., '764 patent col.12 11.16-34 ("The wavelength used according to the present in *1366 vention for BPH treatment should be strongly absorbed in the prostate tissue to help initiate and maintain tissue vaporization without creating deep tissue heating. The wavelength also must be minimally absorbed by the irrigant it used during the procedure, typically water. The 532 nm light produced by the system of FIG.5, is both strongly absorbed in oxyhemoglobin and weakly absorbed in water.... In yet other embodiments, wavelengths in the range from 200 nm-500 nm are used, which have strong oxyhemoglobin absorption and relatively weak water absorption ....”); id. col.14 11.57-59 ("KTP laser energy will be generated by a high power 532 nm laser capable of delivering 80W of KTP laser power to tissue.”); id. col. 15 11.25-55 (comparing the 1064 nm wavelength used in the prior art to the 532 nm wavelength and concluding that the 532 laser beam is preferable because it is "substantially completely absorbed within less than about 1 mm of the surface of prostatic tissue.... The coagulation zone is very thin because of the small optical penetration depth of the 532 wavelength .... Other wavelengths which are substantially completely absorbed within less than about 1 mm of the surface of the prostatic tissue include wavelengths less than about 650 nm, for example between about 200 nm and 650 nm.”).

. As the majority points out, the reference to the 200 to 650 nm range in the dependent claims (claims 4-6, 19-21, 32-34, 37, 59-62 and 67-74) suggests that the independent claims are broader. See Majority Op. at 1359-60. But this merely suggests that the photoselective vaporization limitation applies to somewhat longer wavelengths than 200 to 650 nm.