1 F.3d 1253
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Satyen MUKHERJEE and Thomas Chang, Appellants,
v.
Stefan K-C LAI, Simom M. Tam and Vinod Dham, Appellees.
 No. 93-1068.
 United States Court of Appeals, Federal Circuit.
 June 21, 1993.
 
 Before ARCHER, Circuit Judge, BENNETT, Senior Circuit Judge, and RADER, Circuit Judge.
 ARCHER, Circuit Judge.
 
 DECISION
 
 1
 Junior-party Satyen Mukherjee et al.[1] appeals from the decision of the Patent and Trademark Office Board of Patent Appeals and Interferences (board), Interference No. 102,258 (Aug. 12, 1992), awarding priority of invention of the subject matter of counts 1-4 to senior-party Stefan K-C Lai et al.[2] We vacate the award of priority and remand.
 
 DISCUSSION
 
 2
 The Lai Application, Serial No. 07/253,775, was filed October 5, 1988, and claims the benefit of applications Serial No. 06/667,905 (the '905 application), filed November 2, 1984, Serial No. 06/849,421, filed April 8, 1986, and Serial No. 06/892,446, filed August 4, 1986. Lai provoked an interference by copying claims 1, 2, 11, and 12 of United States Patent No. 4,698,787 to Mukherjee et al., granted on an application filed November 21, 1984 (19 days after Lai's effective filing date). The four counts of the interference correspond exactly to added claims 14-17 of Lai, and to claims 1, 2, 11, and 12 of Mukherjee, respectively.
 
 
 3
 The board found that Lai conceived the subject matter of the counts as of January 16, 1984; Mukherjee has not contested this finding. Each party agreed that it could not show an actual reduction to practice. The board concluded that Lai was entitled to claim the benefit of the filing date of the '905 application. The board consequently found Lai to be the first to conceive and the first to reduce to practice (constructively), and therefore awarded Lai priority of invention of the subject matter of the counts.[3]
 
 
 4
 In this appeal, Mukherjee challenges the board's decision, arguing that the '905 application does not support the counts, and that Lai concealed in the '905 application Lai's best mode for practicing the invention of the counts, thus failing to satisfy respectively the enablement and best mode requirements of 35 U.S.C. Sec. 112, paragraph 1. As a result, Mukherjee argues, Lai is not entitled to the benefit of the filing date of the '905 application under 35 U.S.C. Sec. 120.
 
 
 5
 "Having copied the claims from [the Mukherjee] patent, [Lai] must show by clear and convincing evidence that the disclosure on which he relies supports the copied claims that became the interference counts." DeGeorge v. Bernier, 768 F.2d 1318, 1321, 226 USPQ 758, 760 (Fed.Cir.1985). The first issue is enablement--whether Lai has shown that the '905 application "contain[s] a description that enables one skilled in the art to make and use the" invention defined by the counts. Id. at 1323, 226 USPQ2d at 762. Enablement is a matter of law reviewed by this court de novo. Atlas Powder Co. v. E.I. DuPont de Nemours & Co., 750 F.2d 1569, 1576, 224 USPQ 409, 413 (Fed.Cir.1984).
 
 
 6
 Count 2 requires, inter alia, "a first layer of insulating material ... having a high dielectric constant...." It is undisputed that the '905 application discloses only silicon dioxide as the insulating material between the control gate and the floating gate of the memory cell and that dielectric constant of silicon dioxide is 3.9. The question therefore is whether the disclosure of silicon dioxide supports the count requirement of an insulating material having a "high dielectric constant." That question turns on the construction of the count, a question of law that we review de novo. DeGeorge, 768 F.2d at 1321, 226 USPQ2d at 760-61.
 
 
 7
 "High" is a relative term, and "high dielectric constant" in count 2 is ambiguous inasmuch as the count contains no further description of this limitation to aid in its construction.[4] Because the count is ambiguous, resort to the specification and other claims of the patent from which the count was copied is both necessary and appropriate for proper construction. DeGeorge, 768 F.2d at 1321-23, 226 USPQ at 761; see In re Spina, 975 F.2d 854, 856, 24 USPQ2d 1142, 1144 (Fed.Cir.1992).[5]
 
 
 8
 The board construed "high dielectric constant" as "broad" and "met by the dielectric constant of [silicon dioxide], which the parties have acknowledged is 3.9." The board based its construction solely on the doctrine of claim differentiation. Uninvolved claim 3 of Mukherjee depends from claim 2 (which corresponds to count 2); claim 3 further defines "high dielectric constant" as "greater than 5." The board held that the limitation of claim 3 may not be read into claim 2, and that therefore the "high dielectric constant" of count 2 (and claim 2) necessarily means a constant less than 5, which the board further held includes silicon dioxide. We do not agree.
 
 
 9
 Claim differentiation creates a presumption, in this case, that "high dielectric constant" in count 2 is broader than "greater than 5" as used in claim 3. See Tandon Corp. v. United States Int'l Trade Comm'n, 831 F.2d 1017, 1023-24, 1028, 4 USPQ2d 1283, 1288, 1292 (Fed.Cir.1987). This presumption however is not absolute and irrebuttable. Where the specification bears only one reasonable interpretation of the claim term at issue, the presumption may be overcome. E.g., Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1269 & n. 4, 229 USPQ 805, 810 & n. 4 (Fed.Cir.1986); see Hormone Research Foundation, Inc. v. Genentech, Inc., 904 F.2d 1558, 1567 n. 15, 15 USPQ2d 1039, 1047 n. 15 (Fed.Cir.1990); Autogiro Co. of Am. v. United States, 384 F.2d 391, 404, 155 USPQ 697, 708 (Ct.Cl.1967).
 
 
 10
 In this case, the specification uses the term "high dielectric constant" throughout, repeatedly emphasizing its importance. The specification explicitly defines high dielectric constant as greater than 5:
 
 
 11
 The structure of the present invention maximizes the voltage across the floating gate ... by [among other ways] selecting a material having a high dielectric constant, i.e., greater than 5....
 
 
 12
 Col. 7, lines 14-18 (emphasis added). The specification also describes two materials having high dielectric constants: tantalum peroxide (21) and silicon nitride (7). In view of the clarity and force of the specification, we are convinced that the only reasonable definition of "high dielectric constant" is a constant greater than 5. As such, the presumption created by claim differentiation is overcome. Consequently, the disclosure of silicon dioxide in the '905 application does not support the recitation "high dielectric constant" of count 2.
 
 
 13
 Even if we were to accept Lai's argument and the board's holding, which we do not, that "high dielectric constant" is broader than "greater than 5," the dielectric constant may not be so broad as to include the dielectric constant of silicon dioxide (3.9). "High dielectric constant" must have some minimum value, else the term is superfluous. The specification expressly rejects the prior art use of silicon dioxide:
 
 
 14
 The floating gate and the control gate are separated by a layer of insulating material, typically [in the prior art] silicon dioxide (SiO2 ).... [T]he dielectric layer between the floating gate and the control gate is important.
 
 
 15
 ....
 
 
 16
 [In the prior art a] layer of silicon dioxide is ... deposited or thermally grown on the [floating gate]. The layer of silicon dioxide is typically approximately 750 angstroms.... Thus, current devices exhibit low cyclability for program and erase operations.
 
 
 17
 Col. 1, lines 29-61.
 
 
 18
 Accordingly, the board erred in concluding that Lai proved that the '905 application supports count 2.
 
 
 19
 Count 1 requires, inter alia, "means for injecting hot electrons onto the floating gate...." To interpret this means element, we must look to the specification of the patent from which it came. 35 U.S.C. Sec. 112, paragraph 6; see In re Spina, 975 F.2d at 857, 24 USPQ2d at 1144-45. It is clear from the specification that the described structure corresponding to this element is "an asymmetrical drain/source junction, a uniformly thin gate dielectric, and a dielectric between the control gate and the floating gate which has a high dielectric constant," col. 5, lines 31-35 (emphasis added); e.g., col. 6, lines 48-52, and of course equivalents thereof. Indeed, Lai agrees with this interpretation, save omitting the "high dielectric constant" limitation from the agreed upon dielectric located between the floating gate and control gate. Br. for Appellees at 15.
 
 
 20
 Lai argues that claim differentiation precludes interpreting the means element of count 1 (and claim 1) to include the structure expressly recited in dependent count 2 (and claim 2)--a dielectric having a high dielectric constant. We rejected this same argument in Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1538, 19 USPQ2d 1367, 1371 (Fed.Cir.1991), where we held that the judicially developed doctrine of claim differentiation cannot override the statutory mandate of 35 U.S.C. Sec. 112, paragraph 6, that a means element is limited in scope to corresponding structure described in the specification and equivalents thereof. Because Laitram is indistinguishable on this point, we conclude that count 1 requires, inter alia, a material having a high dielectric constant and equivalents thereof. As Lai has not argued that silicon dioxide is an equivalent of a material having a high dielectric constant, the '905 application does not support the subject matter of count 1.
 
 
 21
 Support for counts 3 and 4, which depend from count 2, is lacking for the reasons discussed above.[6] Because the board found that Lai was entitled to the benefit of the filing date of the '905 application, and thus that Lai was first to conceive and first to reduce to practice (constructively), see supra, the board did not reach several questions raised, including diligence by Lai. Accordingly, the decision of the board awarding priority of invention to Lai is vacated and the case is remanded.
 
 
 
 [1]
 The real party in interest is Rohm Corporation
 
 
 [2]
 The real party in interest is Intel Corporation
 
 
 [3]
 Lai opens its brief with a factual discussion of how "Mukherjee Misappropriated The Invention From Lai," including citation to the joint appendix. The issue of derivation, 35 U.S.C. Sec. 102(f), was not decided by the board, is not part of this appeal, and plays no role in our consideration of the issues properly raised
 
 
 [4]
 Cf. In re Corr, 347 F.2d 578, 580, 146 USPQ 69, 70-71 (CCPA1965)
 
 
 [5]
 Lai asserts that "high dielectric constant" is merely broad, not ambiguous. Broad terms and ambiguous terms however are not mutually exclusive categories. Lai demonstrates this by going outside the claim (to the other claims) to define the "breadth" of high dielectric constant
 
 
 [6]
 In view of our disposition on the enablement issue, we need not decide Mukherjee's other exceptions to the decision of the board